[Civ. No. 356.   First Appellate District.—July 10, 1907.]

## WM. C. ALBERGER, Petitioner, v. W. S. KINGSBURY, Surveyor General, etc., Respondent.

STATE LANDS—FOREST RESERVATION—CONSTRUCTION OF FEDERAL STATUTE—LIEU LANDS—RIGHTS OF STATE.—An order of the Secretary of the Interior temporarily withdrawing lands from disposition including sections which would otherwise belong to the state, pending determination of the advisability of including them within a forest reservation, constitutes a reservation of such lands, within the meaning of section 2275 of the Revised Statutes. Though the state may await the extinguishment of such reservation, it need not do so, and may at once take lieu lands instead thereof.

ID.—RIGHTS OF APPLICANT FROM STATE TO LIEU LAND—MANDAMUS.— Where an applicant for the purchase of a sixteenth section from the state, after such section has been reserved by the order of the Secretary of the Interior, seeks to select lieu land in place thereof, he is entitled to a writ of mandate to compel the state surveyor general to communicate with the United States land office, and ask that the land selected by such applicant as lieu land be accepted in part satisfaction of the grant to the state.

APPLICATION for writ of mandate to W. S. Kingsbury, surveyor general.

The facts are stated in the opinion of the court.

F. D. Brandon, for Petitioner.

U. S. Webb, Attorney General, for Respondent.

COOPER, P. J.—This is an original application to this court for a writ of mandate, to compel the defendant to receive and file the plaintiff's application to purchase from the state of California section 5 of township 26 north, range 17 east, M. D. M., being in Lassen county, state of California, and to thereupon make selection and location in the proper United States land office, on behalf of plaintiff, as lieu land of the lands so applied for by plaintiff, and to make such selection and location in lieu of section 16, township 42 north, range 3 east, M. D. M.

Plaintiff alleges in his complaint his qualifications to purchase state school land; sets out a copy of his application, and also alleges that he tendered said application to the defendant with the proper fee for filing the same; that the land described in the application has been regularly surveyed and sectionized by the United States, and the township plat, showing that said land had been so regularly surveyed and sectionized, had been more than five years on file in the proper United States land office; that said section 16, township 42 north, range 3 east, for which the lands applied for are desired to be taken as lieu lands, is unsurveyed public land of the United States.

It is stipulated that the following are the facts on which this controversy hinges, to wit:

"That the question and only question intended by the parties to be presented by this record, is whether the lands or any of the lands described in the letter dated December 12, 1904, hereinafter specifically set forth, are located within a reservation within the meaning of the Act of Congress which is known as section 2275 of the Revised Statutes, [U. S. Comp. Stats. 1901, p. 1381]. That on the 12th day of December, 1904, James Wilson, the then Secretary of Agriculture, wrote that certain letter which is and was in words and figures as follows, to wit:

" 'Department of Agriculture,
" 'Office of the Secretary,
" 'Washington, D. C., Dec. 12, 1904.
" 'The Honorable the Secretary of the Interior,—
" 'Sir:

" 'A field examination of the following described lands in the vicinity of Mount Hoffman in the State of California has recently been made by the Bureau of Forestry, and the region as a whole has been found to be well adapted to forest reserve purposes. The best of the timber lands are rapidly passing into private ownership through lieu selections and Timber and Stone entries, and in order that title to the remaining public lands may rest with the government until further action is decided upon, I have the honor to recommend that all the vacant unappropriated public lands in the following described townships and parts thereof be temporarily withdrawn from settlement at the earliest practicable date . . . T. 42

N. R. 3 E., the entire township . . . all numbered from the Mount Diablo Base and Meridian.

" 'Very respectfully,

" 'Your obedient servant,

" 'JAMES WILSON, Secretary.'

"It is further admitted that on the 13th day of December, 1904, E. A. Hitchcock, the then Secretary of the Interior, endorsed on said letter that certain endorsement which is and was in words and figures as follows, to wit:

" 'J. S. P.                    A. M.

" 'Dept. of the Interior,

" 'Dec. 13, '04.

" 'Respectfully referred to Com. Gen. Land.

" 'The public lands in the prescribed areas are hereby temporarily withdrawn from disposition under the public land laws, and the Comr. is directed to instruct the local offices in the premises, *immediately*, by wire, and report action, with return of letter.

" 'E. A. HITCHCOCK, Secretary.'

"It is further admitted that on the 13th day of December, 1904, W. A. Richards, the then Commissioner of the General Land Office, wrote that certain letter which is and was in words and figures as follows, to wit:

" 'Department of the Interior,

" 'United States Land Office,

" 'Washington, D. C., Dec. 13, 1904.

" 'Register and Receiver,

" 'Redding, California.

" 'Gentlemen:—

" 'On December 13, 1904, the Secretary of the Interior temporarily withdrew all the public lands in the below described areas from settlement, entry, sale or other disposal, except under the mineral laws, pending determination as to the advisability of including the same within a forest reservation. The lands so withdrawn are as follows . . . Township 42, N. Range 3 East, M. D. M.

" 'Note this withdrawal upon the records of your office.

" 'Very respectfully,

" 'W. A. RICHARDS, Commissioner.'

" . . . It is further stipulated and agreed that said letters and endorsements thereon are still in full force and effect,

and that the same have never been altered, withdrawn or modified.

"It is further stipulated and agreed that at all times mentioned in the complaint and petition of plaintiff the Commissioner of the General Land Office had adopted, and the Secretary of the Interior had approved, and that there were in full force and effect certain regulations governing selections of indemnity school lands. That among others said regulations contained the following provisions and regulations: 'The cause of the loss in each case must be specifically stated. If caused by an entry based upon a settlement claim initiated prior to survey, the number of the entry must be given. If occasioned by a reservation of the land entitling the States to indemnity, the date, name and purpose of the reservation must be stated. If the loss occurs by reason of the fractional character of the land, it must be set forth.' "

It is said in the points and authorities that the entire case depends and turns upon the proper construction of section 2275 of the Revised Statutes. Said section, so far as material here, is as follows: "Where settlements with a view to pre-emption or homestead have been or shall hereafter be made before the survey of the land in the field, which are found to have been made on sections 16 or 36, those sections shall be subject to the claims of such settlers, and if such sections or either of them be or shall be granted, reserved or pledged for the use of schools or colleges in the State or Territory in which they lie, other lands of equal acreage are hereby appropriated and granted, and may be selected by said State or Territory in lieu of such as may be thus taken by pre-emption or homestead settlers. *And other lands of equal acreage are also hereby appropriated and granted, and may be selected by said State or Territory where sections 16 or 36 are mineral lands, or are included within any Indian, Military or other Reservation, or are otherwise disposed of by the United States.*" (The italics are ours.)

The question is as to whether or not the said section 16, township 42 north, range 3 east, has been included within a reservation within the meaning of the italicized clause of the above section. The said section 16 has not been included in any Indian or military reservation, but it has been kept back or reserved "pending determination as to the advisability of including the same within a forest reservation." The words

"other reservations" are evidently used in a broad sense in the statute. The word "reservation" is defined in the Standard dictionary as "that which is reserved, kept back, withheld." The said sixteenth section, to which the state would be otherwise entitled, has been by the proper authorities of the United States—the land department—kept back, withheld and reserved. It has been reserved with a view to including it in a permanent forest reserve. The state is not now entitled to it because the United States has seen fit to reserve it for its own uses. It is no answer to this to say that the reservation may not be made permanent, and that the state may yet be entitled to the land. That might be said as to any other kind of reservation—for military purposes, for Indians or any other purpose. A reservation is a reservation, no matter what may be the purpose, nor for how long a time the reservation may continue. The statute does not fix a time during which it shall continue, and we are not at liberty to do so. In our opinion the question as to time refers only to the time when the state desires to take the land. Can the state take the section in place now? Evidently not, because it has been reserved and withheld from sale. This view is made clear by the concluding portion of the section, which is as follows: "Provided, however, that nothing herein contained shall prevent any State or Territory from awaiting the extinguishment of any such military, Indian or other reservation, and the restoration of the lands therein embraced to the public domain, and then taking the sections 16 and 36 in place therein; but nothing in this proviso shall be construed as conferring any right not now existing." The above-quoted proviso gives the state the right to await the extinguishment of any reservation which includes a sixteenth or thirty-sixth section, and then to take the section in place; but that is a matter solely for the state. It need not wait for years or forever. It may at once take lieu lands and sell them to its citizens or to the persons authorized by statute to receive them. It makes no difference to the state as to whether it sells the sixteenth and thirty-sixth sections or lands in lieu thereof, because the price is the same in either case. When the reservation exists—no matter how long it may continue—and the state is deprived of the lands in place, it immediately has the right to select and take other lands in lieu of the lands withheld from it. This right continues as long

6 Cal. App.—7

as the withdrawal or reservation continues. We know of no decision or rule of law that requires the state to try the question as to the time the United States may desire to keep the land in reserve.

The view we have taken seems to us to be the view of common sense and justice. Under it the state will get no more land than it is entitled to, and the United States will be deprived of no more of its public domain than if the state had waited and taken the section in place. The statute is to be given a liberal construction so as to do justice and promote its objects and purposes.

While there are few decisions bearing upon the question that are directly in point, there are decisions which tend to sustain the view we have taken. In a decision rendered by Secretary Smith April 13, 1905 (20 Land. Dec. 327), it appeared that the state of California had made a lieu selection in lieu of an unsurveyed sixteenth section included within a withdrawal. The commissioner of the general land office had rejected the selection, holding that the law granting the lieu right must be held to apply only to reservations created by an act of Congress or by proclamation of the President, and not to a mere temporary withdrawal of lands pending an investigation as to the character of the trees growing thereon. From this decision the state appealed, so that the matter came up before the secretary squarely upon the question of law. The secretary in his opinion held that the state might take other lands, and said: "It is not necessary that the reservation of said section 16 be of a permanent character to justify indemnity selection made by the State."

In *Wolsey* v. *Chapman*, 101 U. S. (11 Otto) 755, [25 L. ed. 915], a construction was given to section 8 of an act to appropriate the proceeds of the sales of public lands and to grant pre-emption rights (5 Stats. at Large, 455). The section contained the proviso "that to each of the said States which has already received grants for said purposes there is hereby granted no more than the quantity of land which shall, together with the amount such State has already received as aforesaid, make 500,000 acres; the selections in all the States to be made within their limits respectively in such a manner as the legislature thereof shall direct, and located in parcels conformable to sectional divisions and subdivisions of not less than 320 acres in one location on public land, ex-

cept such as is or may be reserved from sale by any law of Congress or proclamation of the President of the United States." The supreme court of the United States, in discussing the clause, said: "There seems to be no good reason why the selections of the pre-emptioner should be restricted within narrower limits than those of the State, and we cannot believe it was the intention of Congress to give a State the power to take lands under section 8 which had actually been reserved by the United States for any purpose whatever."

In *Wolcott* v. *Desmoines Nav. Co.*, 5 Wall. 681, the question was as to whether or not certain lands, which were within the limits of a grant made while they were withdrawn under authority of the land department of the United States, passed by the grant to the railroad company.

The granting act contained a proviso that "any and all lands heretofore reserved by competent authority should not pass by the grant"; and the court held that the temporary withdrawal of them by the order of the commissioner was such a reservation as excluded them from the grant.

In *Northern Pac. R. R. Co.* v. *Musser Sauntry Land etc. Co.*, 168 U. S. 604, [18 Sup. Ct. Rep. 205], the question was whether a departmental withdrawal of certain lands within the indemnity limits of a railroad grant until it should be seen if they should be needed to satisfy that grant, was a reservation, and the court held that it was. In the opinion it is said: "The withdrawal by the Secretary in aid of the grant to the State of Wisconsin was valid, and operated to withdraw the odd-numbered sections within its limits from disposal by the Land officers of the government under the general land laws. The act of the Secretary was in effect a reservation."

The following cases have more or less bearing upon the question: *Riley* v. *Welles*, 154 U. S. 578, [14 Sup. Ct. Rep. 1166, 19 L. ed. 648]; *Dubuque Co.* v. *Desmoines R. R. Co.*, 109 U. S. 329, [3 Sup. Ct. Rep. 188]; *Bullard* v. *Desmoines Co.*, 122 U. S. 167, [7 Sup. Ct. Rep. 1149]; *Wilcox* v. *Jackson*, 13 Pet. 498.

Under section 3398 of the Political Code, the surveyor general is the general agent of the state for the location in the United States land office of the unsold portions of the five hundred thousand acres of land granted to the state for

school purposes, and the sixteenth and thirty-sixth sections granted for the use of public schools, and lands in lieu thereof. When any person desires to purchase any portion of these lands, and makes the proper affidavit as prescribed in the code, it is the duty of the surveyor general to file such application. Section 3406 of the Political Code provides as follows: "Duty of Surveyor-General on application for purchase. The Surveyor-General must, whenever application is made to him for any portion of the lands mentioned in section 3398, communicate with the United States Land Office, and ask that the lands described in the application be accepted in part satisfaction of the grant under which it is sought to be located." It is thus made by the section the ministerial duty of the surveyor general by reason of his office to communicate with the United States land office, and ask that the lands described in the application be accepted in part satisfaction of the said grant to the state. It is not our business to anticipate the rulings of the United States land department upon the question herein decided, nor as to whether or not they will receive the application and grant the lieu land in place of the said sixteenth section. We must presume that the officers of the land department will obey the law, and we cannot in this decision anticipate any of its rulings.

It follows from what has been said that a writ of mandate should issue, directing and commanding the defendant as surveyor general and *ex-officio* registrar of the state land office, and as locating agent of the state of California, to receive and file the plaintiff's application on payment of the lawful filing fee therefor, and thereupon to communicate with the United States land office, and ask that the lands described in plaintiff's application be accepted in part satisfaction of the grant under which said lands are sought to be located; and it is so ordered.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 5, 1907.