[Civ. No. 777. Fourth Appellate District.—March 14, 1932.]

LINDSAY STRATHMORE IRRIGATION DISTRICT, Petitioner, v. THE SUPERIOR COURT OF TULARE COUNTY et al., Respondents.

Sloss & Turner, Guy Knupp and W. G. Irving for Petitioner.

Farnsworth, Burke & Maddox and W. R. Bailey for Respondents.

MARKS, J.—This is an original petition filed in this court praying for a writ of mandate requiring respondents to

set for trial an action pending in the Superior Court of Tulare County wherein the petitioner here and the plaintiff there is seeking, under the right of eminent domain, to condemn the right to take water from within the boundaries of the Consolidated Peoples Ditch Company to lands lying without such boundaries. The respondents filed a general demurrer and answer to the petition. The general demurrer will be overruled for reasons which will hereafter appear. We will consider the cause upon its merits.

The petitioner is an irrigation district organized and existing under an act of the legislature entitled, "An act to provide for the organization and government of irrigation districts and to provide for the acquisition or construction thereby of works for the irrigation of lands embraced within such districts and also to provide for the distribution of water for irrigation purposes," approved March 31, 1897 (Stats. of 1897, p. 254), and the acts amendatory thereof and supplementary thereto. Under section 15 of this act petitioner possesses the power of eminent domain and may condemn water and water rights "in this or other states or in a foreign nation".

The Consolidated Peoples Ditch Company is a mutual water company organized for the purpose of distributing irrigating water to its stockholders without profit. Its amended articles of incorporation restrict the use of this water to the limits of a defined district which did not include the lands served by petitioner. In the action filed by petitioner in Tulare County it sought to condemn the right to restrict the use of this water to the lands within this district so that it could take the water from within the district served by the Consolidated Peoples Ditch Company and deliver it to lands without such district which were irrigated by waters furnished by petitioner.

The capital stock of the Consolidated Peoples Ditch Company was divided into 9,324 shares, of which the petitioner owned 495 at the time of the institution of the condemnation suit. It sought to have condemned the right to have delivered to it and take without the Consolidated Peoples Ditch Company's district 495/9324 of the irrigating water belonging to and diverted from the Lower Kaweah River by the last-named company in what is known as the "Peoples Ditch". The amount of such water to which it was

entitled varied during different seasons and depended somewhat on the amount of the flow of the river.

The complaint in condemnation was filed on January 15, 1931, and the defendant answered on October 31, 1931. As between these parties the action was then at issue and ready for trial. On November 25, 1931, the Kaweah Delta Water Conservation District filed its motion for leave to intervene in the action. This motion was heard by the respondent judge sitting in the Superior Court of Tulare County and was denied on December 21, 1931. An appeal has been taken from this order which is now pending and is not decided.

It was evidently assumed by counsel for both parties and both of the judges of the Superior Court of Tulare County throughout the proceedings in the respondent court that as the action was brought "by or against . . . any irrigation . . . district . . . affecting or relating to any real property . . . the judge of the superior court of the county . . . shall be disqualified to sit or act" (sec. 170, Code Civ. Proc.). Regardless of whether or not the local judges were disqualified, we believe the respondent judge could sit in the Superior Court of Tulare County whenever authorized so to do by an order of the chairman of the Judicial Council. (Sec. 1a, art. VI, Const. Cal.; *Fay* v. *District Court of Appeal*, 200 Cal. 522 [254 Pac. 896]; *Elder* v. *Hollopeter*, 214 Cal. 427 [6 Pac. (2d) 245].)

On November 18, 1931, the petitioner here, plaintiff in the condemnation action, filed the usual memorandum for the purpose of setting the cause for trial, with proof of service on the attorneys for the defendant. The matter of setting the case for trial was continued from time to time until December 21, 1931, when the petitioner's motion to set was denied by the respondent judge upon the grounds, as alleged in the answer before us, first, because of the proceedings for intervention, and, second, because certain material issues in the condemnation proceedings were involved in the case number 8807 of the Superior Court of Tulare County entitled "Tulare Irrigation District et al., plaintiffs, v. Lindsay Strathmore Irrigation District, defendant," filed on July 15, 1916, which is now pending on appeal to the Supreme Court and is undecided. The court calendars in Tulare

County are in such condition that the condemnation case could be tried within a reasonable time.

The respondent judge, Honorable Erwin W. Owen, is a judge of the Superior Court of the State of California in and for the County of Kern. On January 2, 1931, the chairman of the Judicial Council regularly made an order authorizing and directing him to sit and act as such judge of the county of Tulare until December 31, 1931. On January 2, 1932, a similar order was made which was effective until December 31, 1932.

Section 1264 of the Code of Civil Procedure provides as follows: ''In all actions brought under the provisions of this title, to enforce the right of eminent domain, all courts wherein such actions are or may hereafter be pending, shall give such actions preference over all other civil actions therein, in the matter of setting the same for hearing or trial, and in hearing the same, to the end that all such actions shall be quickly heard and determined.''

 A writ of mandate may be issued to require an inferior tribunal to perform a clear legal duty which the law especially enjoins when not to do so would amount to an abuse of discretion. The writ has been employed to require a superior court to try a cause. (Sec. 1085, Code Civ. Proc.; *Hill* v. *Superior Court,* 15 Cal. App. 307 [114 Pac. 805]; *Moore* v. *Superior Court,* 20 Cal. App. 299 [128 Pac. 946]; *In re Ford,* 160 Cal. 334 [Ann. Cas. 1912D, 1267, 35 L. R. A. (N. S.) 882, 116 Pac. 757]; *Anderson* v. *Superior Court,* 187 Cal. 95 [200 Pac. 963].) If, however, the act in question involves the exercise of judgment or discretion, *mandamus* will not issue to require its performance. (16 Cal. Jur. 809, and cases cited.)

 Respondents earnestly urge that the writ of mandate should be denied for the reason, as they assert, that the complaint of petitioner in the condemnation action fails to state a cause of action and that, therefore, the granting of the writ by this court would be an idle act. We cannot agree with this contention. We assume that the respondent judge is able to settle the pleadings in the cases before him either on demurrer, if one were filed, or upon objection to the introduction of evidence. We cannot assume. that the complaint may not be amended before trial, if it does not now state a cause of action. Where a party has a

clear legal right we should not withhold the writ because such party may be ultimately unsuccessful in gaining the relief sought. In *Walker* v. *Kingsbury,* 36 Cal. App. 617 [173 Pac. 95, 98], it was said: "Respondent advances the point that the writ should be denied because, if issued, it would be an idle act, and this for the reason that, should the writ be granted and should the respondent comply therewith, the reselection would be rejected when it reached the Land Department at Washington. If petitioners have the clear right to the reselection, as we think they have, under the act of 1917, we may not assume that the Secretary of the Interior will arbitrarily interfere with its consummation. The Land Department has held both ways, as we understand, during different administrations, on the very question here involved. That department may not, should the question again be presented, hold to its more recent ruling. At any rate, our duty is to announce the law of the case and leave the consequences to take care of themselves. We cannot deny the relief sought on the assumption that it would be an idle act."

■ Respondents urge that the case should not be set for trial until the appeal of the Kaweah Delta Water Conservation District from the order denying its motion to intervene is determined. The order appealed from denied the motion and the relief sought. An order denying such a motion is self-executing and an appeal from such an order does not stay its execution, because there is nothing to stay. (*In re Imperial Water Co. No. 3,* 199 Cal. 556 [250 Pac. 394]; *Sarthou* v. *Reese,* 151 Cal. 96 [90 Pac. 187]; *Lickley* v. *County Board of Education,* 62 Cal. App. 527 [217 Pac. 133]; *Wood* v. *Board of Fire Commrs.,* 50 Cal. App. 594 [195 Pac. 739].)

■ Respondents next urge that in the complaint in condemnation it is alleged that the diversion point of the water in question is in one quarter of a section, while, in fact, it is in another quarter of the same section. We do not anticipate that there will be any great difficulty in the trial court in determining the correct legal description of the point of diversion should the plaintiff prevail in its condemnation action.

■ The remaining reason for a denial of the writ of mandate urged by respondents has merit and, we believe,

furnished to the respondent judge sufficient grounds for a reasonable exercise of his discretion in refusing to set the condemnation action for trial on the state of the record then before him. As we have observed, the case of *Tulare Irr. Dist. et al.* v. *Lindsay Strathmore Irr. Dist.* was filed in the office of the clerk of the respondent court on July 15, 1916, and is now on appeal to the Supreme Court of the state and is undecided. We are informed by counsel that in its long journey through the courts this case has accumulated a record of gigantic proportions which will take considerable time to review. In this case the petitioner here is the defendant and cross-complainant and the Consolidated Peoples Ditch Company is one of the plaintiffs and cross-defendants. One of the issues between these parties as made by their pleadings, decided by the trial court and, as we are informed, presented on the appeal, is the amount of water which the Consolidated Peoples Ditch Company is entitled to divert from the Lower Kaweah River. We are informed that this company in its pleadings and during the trial of this case and upon the appeal asserts the right to take from the river 300 cubic feet of water per second from February 1st to July 31st each year, both dates inclusive, and a lesser quantity during the remaining months of the year, both dependent upon and varying with the flow of the river. The trial court found and adjudged that it was entitled to divert 250 cubic feet per second during the six months specified, and 125 second-feet during the remaining months of the year, both amounts being subject to deductions depending upon the number of second-feet flowing in the stream. We are informed that the quantity of water which the Consolidated Peoples Ditch Company may take in its ditches is one of the controversial questions involved in the appeal and to be decided and determined in the final judgment in that case.

In the condemnation action the plaintiff, petitioner here, is seeking to condemn the right to take to lands within its boundaries 495/9324 of the water flowing in the main ditch (Peoples Ditch) of the Consolidated Peoples Ditch Company diverted by it from the Lower Kaweah River. During the period from February 1st to July 31st, will it take this fraction of 250 or 300 second-feet? It is obvious that this question cannot be answered until the judgment becomes

final in the case now on appeal, either by its affirmance, its modification on appeal, or after new trial if the present judgment should be reversed. At the present time the value of the rights sought to be condemned cannot be fixed and determined because the quantity of water to be diverted cannot now be fixed and determined. If the right to take to the Lindsay Strathmore Irrigation District a lesser quantity of water has a value which must be paid for by the plaintiff to the defendant, certainly the right to so take a larger quantity of water would require the payment of a greater sum as compensation therefor. In the present state of the record in the condemnation action and in the case now on appeal, we do not see how the evidence as to the value of the rights to be condemned could be sufficiently certain to support a judgment. In what we have just said we do not wish to be understood as intimating that the plaintiff in the condemnation action should or should not prevail in this suit.

In the case of *Houghton* v. *Superior Court*, 187 Cal. 661 [203 Pac. 765, 766], a writ of mandate was sought to compel the respondent court to proceed with the trial of the case of *Houghton* v. *Kales*, in which the plaintiff was seeking to recover judgment for $2,538.60 on a promissory note. The defendant had recovered judgment against Houghton in a much larger sum in another action which was then pending on appeal. This judgment was pleaded as a set-off against the plaintiff's demand. The trial court refused to proceed with the trial of the action on the promissory note until after the decision in the case on appeal. In upholding the action of the trial court the Supreme Court said: "The petitioner, therefore, seeks a writ of mandate to compel the trial court to proceed with the trial and thus enable him to secure a judgment for $2,538.60, together with interest at six per cent from June 21, 1916, against the defendant, who holds a judgment for nearly ten times that much against him. It is obvious that the action of the trial court was in furtherance of justice and the proper exercise of discretion, if authorized by law. The action of the trial court is amply sustained by authority. In the case of *Smith* v. *Jones*, 128 Cal. 14 [60 Pac. 466], a petition for writ of *mandamus* was sought in this court to compel a judge of the superior court to render judgment in an ejectment suit. The defendant in that case pleaded the rendition of a prior judgment between the

same parties wherein said defendant was adjudged the owner of the premises; that an appeal had been taken from the judgment and remained undetermined. Upon the trial of that action plaintiffs had offered evidence in support of their complaint and demanded judgment according to the prayer of their complaint, but the defendant asked that the cause be stayed until the judgment pleaded in his answer should become final. The motion was granted, the submission of the case set aside, and all proceedings stayed until the further order of the court. In determining the matter this court in bank said: 'The jurisdiction of the trial court in a case like the one recited is unquestioned, and the power of the court in a proper case to set aside a submission and postpone final determination is also unquestioned. Many cases may be supposed wherein it would not only be the right of the judge to do so, but it would be his duty in the interest of justice and to promote the substantial rights of the parties. To justify this court in interfering with and controlling the action of the trial courts in proceedings of this nature it would require a clear showing that the act complained of was an abuse of discretion. In this case no such showing has been made; on the contrary, from an inspection of the petition and the return thereto, it would appear that the order of the court complained of, under the circumstances, was one very proper to be made.' . . . From the foregoing decisions it is clear that a judgment which would be *res adjudicata* of matters involved in an action may be availed of during the pendency of an appeal from such judgment, either by a plea in abatement upon proof of which a judgment may be rendered that the action abate (*Connor* v. *Bank of Bakersfield*, 174 Cal. 400. [163 Pac. 353]), or by a continuance of a second action until the result of the appeal has been determined. . . . In any event, we now expressly overrule the case of *Dunphy* v. *Belden*, 57 Cal. 427, and hold that where the trial of an action involves the consideration of a previous judgment rendered between the parties to the action which, if final, would be *res adjudicata* on some or all of the issues involved in the trial, that the trial court in the exercise of a sound discretion may continue the trial of the case until the final adjudication of the matter in the other action.''

We are of the opinion that the condemnation action involves the consideration of the previous judgment in the case of *Tulare Irr. Dist. et al.* v. *Lindsay Strathmore Irr. Dist.*, which if final, would be *res judicata* on some of the issues in the condemnation case. On the state of the record before him we believe that the respondent judge exercised a reasonable discretion in refusing to set the condemnation case for trial.

From the record before us it appears that an early trial of the condemnation action is of the most vital importance to the petitioner. There are about 14,000 acres of land within its boundaries suitable for the cultivation of citrus and deciduous fruits, of which more than 10,000 acres are planted to such fruit-trees in full bearing. A serious shortage of irrigating water has existed and probably will exist again. Such fruit-trees cannot be cultivated without being adequately irrigated. It is well known that citrus trees will not live without sufficient water.

In the complaint in condemnation it is alleged that the Consolidated Peoples Ditch Company claims to be the owner of and entitled to divert from the Lower Kaweah River 300 cubic feet of water per second. This is the maximum amount of water claimed by this company, if we correctly understand the record and counsel. We infer from the record and the oral argument of counsel for petitioner that if an early trial of the case can be had, it would be willing to try it, and pay for the rights condemned, on the basis of the ownership by the Consolidated Peoples Ditch Company of the maximum amount of water which this company claimed the right to divert from the Lower Kaweah River at various times of the year, in its pleadings in the case of *Tulare Irr. Dist. et al.* v. *Lindsay Strathmore Irr. Dist.*, now on appeal. If this were done it would be unnecessary to delay the trial of the condemnation suit until after the final judgment in the other case, because the petitioner here, the plaintiff in condemnation, would concede to the Consolidated Peoples Ditch Company everything it could possibly gain under a final judgment most favorable to it in the case on appeal. By permitting the trial of the condemnation action a serious loss of large proportions to the residents of the Lindsay Strathmore Irrigation District might be prevented should it be able to prevail in its suit.

In a proceeding of this nature the technicalities of the law should not be permitted to work an injury upon a large community of people if such a result can be achieved without violating the rights of others or well-established principles of law and procedure. While the plaintiff may or may not finally prevail in its condemnation action, it should, if possible, be given the opportunity of having its rights adjudicated without long and unnecessary delay.

If the petitioner here, the plaintiff in the condemnation action, be so advised, and if within twenty days from the filing of this opinion it file in the respondent court and a certified copy thereof with the clerk of this court a declaration that in so far as it is concerned the case may be tried and judgment, if any, rendered upon the theory that it is seeking to condemn, and is condemning, if successful in its suit, the right to take without the district served by the Consolidated Peoples Ditch Company as such district is defined in its articles of incorporation, 495/9324 of the maximum amount of the flow of the Lower Kaweah River, with the variations according to the seasons and the total flow of the river, to which the Consolidated Peoples Ditch Company claims and alleges it is entitled to take in its ditch known as the "Peoples Ditch" in its pleadings in the case of the *Tulare Irr. Dist. et al.* v. *Lindsay Strathmore Irr. Dist.*, bearing number 8807 in the office of the respondent court, and number Sacramento No. 4041 in the files of the Supreme Court of California, then the writ of mandate will issue as prayed for, but upon the failure to file such declaration and the certified copy thereof within the time and in the places hereinbefore specified the writ of mandate will be denied and the alternative writ dismissed and discharged.

Upon the filing of said agreement, and the certified copy thereof, within said twenty days as herein provided, if it be filed, the demurrer will be overruled and the writ of mandate issued. If the agreement and a certified copy thereof be not so filed at the expiration of twenty days, an order will be entered overruling said demurrer and denying said writ.

Barnard, P. J., and Jennings, J., concurred.

On March 23, 1932, the court made the following order:

The petitioner having filed with the clerk of the respondent court the agreement referred to and required in the opinion, and having this day filed a certified copy thereof in the office of the clerk of this court, it is further ordered that the demurrer of respondents be overruled and that the writ of mandate herein be issued as prayed for in the petition of the petitioner.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 23, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 19, 1932.

Preston, J., and Langdon, J., dissented.