[Sac. No. 1715. In Bank.—November 19, 1909.]

# M. INGLIN et. al., Appellants, v. C. H. HOPPIN et al., Respondents.

RECLAMATION DISTRICTS—LEGISLATIVE ACTS.—The creation of reclamation districts and the setting off of lands and the delimiting of the boundaries of such districts are legislative acts.

ID.—CONTROL OF COURTS OVER LEGISLATIVE ACTS OF INFERIOR BOARDS.—There is a broad distinction to be recognized between the control by courts over the general legislature acting within its powers, and the control which may be exercised over inferior boards and tribunals charged with the performance of an act enjoined by the legislature.

ID.—MANDAMUS—ABUSE OF DISCRETION.—ENFORCEMENT OF PARTICULAR ACTION.—While it is a general rule that *mandamus* will not lie to control the discretion of a court or officer, so as to force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion, and to force a particular action by the inferior tribunal or officer, when the law clearly establishes the petitioner's right to such action.

ID.—RIGHT TO ESTABLISHMENT OF INDEPENDENT DISTRICT—MANDAMUS LIES TO ENFORCE RIGHT.—Landowners who seek to have their lands in a particular reclamation district set off and erected into an independent district, and who have taken all the steps and proceedings to that end required by sections 3446, 3472, 3481, et seq. of the Political Code, and upon the hearing of their petition established all of the facts required by law by uncontradicted, material, sufficient, and competent evidence, may maintain a writ of mandate against the board of supervisors, upon their refusal to make an order establishing such independent district, to compel them to make such order. Upon such a showing being made, the petitioners are entitled to have their lands set off into an independent district, and the board of supervisors are without power to arbitrarily deny it.

ID.—HEARING ON MANDAMUS—EVIDENCE TO BE ADDUCED.—On the hearing of the *mandamus* proceeding by the superior court, the facts asserted to have been proved before the board of supervisors by good and sufficient evidence without conflict are not to be tried *de novo.* The hearing should be had upon the same evidence presented to the board of supervisors, and if such evidence was uncontradicted, competent, and sufficient to prove satisfactorily all matters required by the Political Code, it will become the duty of the superior court to issue its mandate accordingly.

ID.—APPEAL TO SUPERIOR COURT FROM ORDER OF BOARD—CONSTITUTIONAL LAW.—The provision of the act of 1893 (Stats. 1893, p. 174), purporting to provide for an appeal to the superior court from the

order of the board of supervisors, is unconstitutional and unnecessary.

APPEAL from a judgment of the Superior Court of Yolo County.  E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

Hudson Grant, for Appellants.

·Arthur C. Huston, and Harry L. Huston, for Respondents.

HENSHAW, J.—This is an application for a writ of mandate directing the board of supervisors of Yolo County to set aside a specific order heretofore given by them in the matter of the petition of plaintiffs to have certain lands situated in Reclamation District No. 730 of said Yolo County set off and erected into an independent district, by which order the petition was denied, and to enter an order granting the petition. To this application a general demurrer was interposed and sustained.  The question presented therefore is; accepting as true the facts stated in the application for mandate, is any ground shown for the issuance of the writ?

The petition filed by and on behalf of Inglin and his co-plaintiffs herein with the board of supervisors sought to have their lands in Reclamation District No. 730 set off from said district pursuant to the provisions of sections 3446, 3472, 3481, et seq. of the Political Code. Their complaint here avers that they took all the steps and proceedings to that end required by law, and upon the hearing of their petition established all of the facts required by law by uncontradicted, material, sufficient, and competent evidence, but that notwithstanding this the board of supervisors arbitrarily denied their petition. Section 3449 of the Political Code requires that if the board of supervisors find on the hearing of the petition that its statements are correct, they must make an order approving the same.  The gravamen of plaintiffs' complaint here is that with sufficient competent and uncontradicted evidence establishing the statements of their petition to be correct, the board of supervisors arbitrarily denied, instead of approving it.  Upon this state of facts they apply for mandate, succinctly stating their contention in the following language:  "Where the peti-

tioners are entitled upon the admitted facts to the relief demanded, may the board of supervisors arbitrarily deny it?"

The general demurrer was sustained upon the ground that the creation of reclamation districts is referable to the legislative branch of the government, and is therefore beyond the control of the action of the courts; that exclusive jurisdiction to determine these questions has by the general legislature been vested in one of its subordinate agencies—the board of supervisors— and that in the exercise of its powers to determine facts, the board of supervisors may not be controlled; and, finally, that the board of supervisors having acted by denying the petition, mandate will not run against it to force an avoidance of its former order and the entry of another and different order.

It has been repeatedly held by this court, and is unquestionably true, that the creation of reclamation districts and the setting off of lands and the delimiting of the boundaries of such districts are legislative acts. (*Bixler* v. *Supervisors,* 59 Cal. 698; *Glide* v. *Superior Court,* 147 Cal. 21, [81 Pac. 225]; *People* v. *Sacramento Drainage District,* 155 Cal. 373, [103 Pac. 207].) The creation of such districts is legislative in the true sense that the legislature has the power, as it has in the case of any civil or penal law, to create or to withhold creation. No other power of the government can compel the legislature to act in such a matter or to refrain from acting, or, when it has acted, to control the action, other than to declare whether or not it may have been taken within constitutional limitations. This right to act or to withhold action within the discretion or, indeed, within the arbitrary whim of the lawmaking body, is an essential attribute of its powers. But from this it does not follow that where legislative action is not itself complete, where the legislature intrusts the determination of a fact or the doing of an act to some one or another of its agents or mandatories, this act itself takes on the attributes of legislation and becomes legislative in the sense that its due performance may not be controlled by the courts. For to so hold would, in many instances, thwart rather than give effect to the legislative will. Thus the granting of state lands is a legislative power and prerogative. But if, in a proper case, the legislature should ordain that a grant

be made of lands to an individual, and direct the issuance of that grant in the name of and on behalf of the state by some agent appointed thereto, such agent could not resist mandate upon the ground that the act, performance of which was sought to be compelled, was legislative in character, even if the agent were himself an officer of the state as provided by section 14 of article V of the constitution. The question was considered and this principle announced in *State* v. *Elder*, 31 Neb. 169, [47 N. W. 710], where the law declared the speaker of the assembly should open election returns, and declare the result. A writ of mandate directed against him to compel the performance of this duty was resisted upon the ground that he was a legislative officer exercising judicial functions, but the court declared that the law made no distinction in the persons to be compelled to perform an act which the law specially enjoins as a duty resulting from an office on account of any one of the three departments to which the person may belong. So, here, the legislature has provided a plan of which landowners may avail themselves for the formation of reclamation districts. It has declared that when the facts exist, and are shown to exist within the method prescribed by the law, the supervisors shall make an order accordingly, by virtue of which order a reclamation district is created. There is a broad distinction to be recognized between the control by courts over the general legislature acting within its powers, and the control which may be exercised over inferior boards and tribunals charged with the performance of an act enjoined by the legislature. As was pointed out in *People* v. *Sacramento Drainage District*, 155 Cal. 373, [103 Pac. 207], where the legislature has itself spoken in the creation of a district such as this, and where the legislative determination may be deemed to have depended upon a question of fact, it is conclusively presumed that the legislature took evidence in its determination, and the decision which it reached will not be subject to review by the courts. But this doctrine has no application, or, at the most, a much modified application, when applied to subordinate agencies of the legislature, charged themselves with the duty of executing the legislative will. The same exemptions from judicial interference apply to all inferior legislative bodies, so far as their *legislative discretion* extends, but no further. (*Alpers* v. *San Francisco*,

32 Fed. 503; *Davis* v. *Mayor etc. New York,* 4 Duer, 451.)
Where discretion other than legislative is vested in such a
subordinate officer or tribunal, the exercise of that discretion
will be subjected to correction if it be abused.    Where the
act is in its nature ministerial and depends upon the existence
or non-existence of facts, if the jurisdiction to determine the
fact be vested, in the first instance, in such inferior tribunal,
its determination made upon conflicting evidence will not
be reviewed.    Yet, if the case presented be one where the
decision has been in such flat opposition to the plain and
uncontradicted facts as to force the conclusion that the deci-
sion was in bad faith, a review by the courts will always be
open to the aggrieved party, as the cases which we shall cite
will abundantly show.    So here, while it is unquestionably
true that jurisdiction to determine the questions presented
under the petition is, in the first instance, vested in the board
of supervisors, as declared in *Glide* v. *Superior Court,* 147
Cal. 21, [81 Pac. 225], it does not follow, as respondents
contend, that this jurisdiction is exclusive and wholly beyond
the reach of a reviewing court.    As said by the supreme court
of the United States in *Fallbrook Irrigation District* v. *Brad-
ley,* 164 U. S. 169, [17 Sup. Ct. 67] : "It may be that the
action of the board upon any question of fact, as to contents
or sufficiency of the petition, or upon any other fact of a juris-
dictional nature, is open to review in the state courts.    It
would seem to be so held in *Modesto Irrigation District* v.
*Tregea,* 88 Cal. 334, [26 Pac. 237], . . . Very possibly a
decision by the statutory tribunal, which included tracts of
land within the district that plainly could not, by any fair
or proper view of the facts, be benefited by irrigation, would
be the subject of a review in some form and of a reversal by
the courts, on the ground that the decision was based, not
alone upon no evidence in its favor, but that it was actually
opposed to all the evidence and to the plain and uncontra-
dicted facts of common knowledge and was given in bad faith.
In such a case the decision would not have been the result
of fair or honest, although grossly mistaken judgment, but
would be one based upon bad faith and fraud, and could not
be conclusive in the nature of things."    By the pleading such
is the case here presented.    The charge, in effect, is that, not-
withstanding the uncontradicted evidence in petitioners' favor,

the board of supervisors arbitrarily and in gross disregard of the legislative mandate refused to accord them the right guaranteed by the legislature—that of having their lands set apart as an independent district. Plaintiffs here do not seek even to control the exercise of discretion. Their contention is that by the express declaration of the legislature a given result must follow a given state of facts, with no room for the play of discretion upon the part of the board of supervisors; that they have established this state of facts, and that the board of supervisors has refused to declare the result which the legislature itself has said they must declare. In the Glide case, it is held that "jurisdiction over these matters (the formation of reclamation districts) is *primarily* vested with the board of supervisors, and that so long as the board is acting within the scope of its jurisdiction, judicial interference with its proceedings is improper and cannot be tolerated." It was not held, and has never by this court been held, that in a proper case a review of the action of the board in such matters would not be permitted, and, to prevent misunderstanding, this was particularly pointed out in the opinions of the concurring justices in that case. As was there well said by the chief justice: "Vested rights of property and contract rights are placed by the constitution under the protection of the courts, where alone the questions of law and fact upon which they depend can be finally decided."

The writ of mandate may be issued "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person." (Code Civ. Proc., sec. 1085.) As pointed out by the supreme court of the United States, mandate is a flexible writ, whose use in modern times has been much extended. "It does not lie to control judicial discretion, except when that discretion has been abused, but it is a remedy when the case is outside of the exercise of this discretion, and outside of the jurisdiction of the court or officer to which or to whom the writ is addressed." (*Ex parte Virginia,* 100 U. S. 339.) As early as 4 Cal. this court said: "It is not now denied that

*mandamus* may be resorted to by the superior tribunal to compel an inferior officer to do the act which is sought to be enforced, in all cases where the officer has no discretion, and when he is under obligation to do the specific act. . . . In such cases the writ is always liberally interposed for the benefit of the citizen and the advancement of justice." (*McDougall* v. *Bell,* 4 Cal. 179.)

In *Thomas* v. *Armstrong,* 7 Cal. 286, a writ of mandate was sought. The board of supervisors had refused a license to a ferry proprietor. He applied for mandate to compel the board to renew his license. This court said: "We think that this section confers a right upon the party which cannot be arbitrarily divested or disregarded. If it were a case in which there was any doubt, and the supervisors had exercised their discretion, and had determined, on testimony, that the ferry had not been properly kept, there would be no authority to interfere with their determination; but when they act under a mistake of law, and award the license to a stranger, under the supposition that he has succeeded to the rights of the plaintiff, their orders may be reached, and the error corrected by *mandamus* or any other proper proceeding."

In *Stockton R. R. Co.* v. *City of Stockton,* 51 Cal. 328, it is said: "Our view of the law then was and yet is that if an official duty is to be performed on the happening of an event, the officer cannot arbitrarily or capriciously refuse to perform it after the event has happened, on the plea that he is not satisfied that it has happened. If the fact exists and is established by sufficient proofs, it is his legal duty to be satisfied and act accordingly."

In *Temple* v. *Superior Court,* 70 Cal. 211, [10 Pac. 699], mandate was sought to compel the superior court to hear a contempt proceeding which it had refused to do, and this court declared: "Under such circumstances the court cannot, by holding without reason that it has no jurisdiction of the proceeding, divest itself of jurisdiction, and evade the duty of hearing and determining it."

In *Spring Valley Water Works* v. *San Francisco,* 82 Cal. 286, [16 Am. St. Rep. 116, 22 Pac. 910, 1046], the contention was made that the action of the board of supervisors in fixing water rates was legislative, and therefore not subject to the

control of the courts, and this court replied: "There are other cases holding the act to be legislative, but whether it is judicial, legislative or administrative is immaterial. Let it be what it may, it is not above the control of the courts in proper cases."

In *Johnston* v. *Superior Court*, 105 Cal. 666, [39 Pac. 36], the superior court, being satisfied that due notice to creditors had not been given, ordered additional notice to be given. Upon application for mandate to compel the superior court to make its decree showing that due notice had been given, the facts were reviewed, the trial court found to be in error, and mandate issued accordingly.

In *Henry* v. *Barton*, 107 Cal. 535, [40 Pac. 798], *mandamus* was ordered to compel the issuance of a liquor license to an applicant who had complied with all the provisions of the ordinance touching the issuance of such license, the trustees of the town contending that the matter of the issuance was within their discretion.

In *Keller* v. *Hewitt*, 109 Cal. 146, [41 Pac. 871], the applicant for mandate showed that he had successfully passed the examination entitling him to receive a grammar grade certificate as teacher, and that the board of education arbitrarily refused to grant it to him. There, as here, the contention was made that the law vested in the board absolute power and discretion to determine the question irrespective of facts, and that such determination was final and not subject to review. It was held that no such power or discretion was vested, but that the plain duty was imposed upon the board to act in conformity with established facts, and mandate was accordingly issued.

In *Hensley* v. *Superior Court*, 111 Cal. 541, [44 Pac. 232], the superior court had refused to make or enter an order or decree of due notice to creditors, upon the ground that the order for notice to creditors was not in conformity with the law. This court in issuing mandate declared: "Where, as here, the law affixes a right to specific relief from certain facts, and there is no question made as to the existence of such facts, the court has no discretion to refuse the relief. In such a case the limit of the discretionary power of the court has been reached, and nothing but a clear duty remains; and if the relief is refused, and there is, as in this instance,

no appeal or other plain, speedy, and adequate remedy, *mandamus* will lie to compel it."

While, of course, it is the general rule that *mandamus* will not lie to control the discretion of a court or officer, meaning by that that it will not lie to force the exercise of discretion in a particular manner, the above cases abundantly show that *mandamus* will lie to correct abuses of discretion, and will lie to force a particular action by the inferior tribunal or officer, when the law clearly establishes the petitioner's right to such action.

Such is the case here presented by the pleadings. We are not to be misunderstood as holding that the facts asserted in this petition to have been proved before the board of supervisors of Yolo County by good and sufficient evidence without conflict are to be tried by the superior court *de novo*. The hearing will be had upon the same evidence presented to the board of supervisors. Where a question of fact is doubtful or disputed, the court will not interfere with the determination of the supervisors. But if it be established before the superior court as alleged in the petition, that the evidence before the supervisors was uncontradicted, competent and sufficient to prove satisfactorily all matters required by the Political Code, it will become the clear duty of the superior court to issue its mandate to the board of supervisors to accord to the petitioners the right which the statute gives them.

Respondents urge that there was a plain, speedy, and adequate remedy open to appellants by appeal under the statute of 1893, p. 174, which provides in terms for an appeal from the decision of the board of supervisors to the superior court. This provision, however, is both unconstitutional and unnecessary. Section 5 of article VI of the constitution limits appellate jurisdiction of the superior court to cases "arising in justices' and other inferior courts in their respective counties as may be prescribed by law." Notwithstanding the *quasi* judicial functions which boards of supervisors are called upon at times to perform, such boards are in no sense courts within the purview of the constitution. The statute is therefore unconstitutional and is unnecessary, since the writs of review and *mandamus* are sufficient for the correction of their errors. (See *Chinn* v. *Superior Court, ante,* p. 478, [105 Pac. 580], this day decided.)

The judgment is reversed and the cause remanded with directions to the trial court to overrule defendants' demurrer and to permit them to plead to the merits.

Shaw, J., Angellotti, J., Sloss, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.