[Civ. No. 13029. First Dist., Div. Two. July 22, 1946.]

JOHN H. CONROY, Respondent, v. THE CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, and Norman Sanford Wolff, Deputy City Attorney, for Appellants.

Melvin M. Belli and Van H. Pinney for Respondent.

GOODELL, J.—This appeal was taken by the Civil Service Commission of the City and County of San Francisco and the city and county itself, from a judgment in a mandate

proceeding directing the commission to place the petitioner upon the eligible list for promotion from the rank of sergeant to that of lieutenant in the San Francisco Police Department, in the position on the list designated by the court, and to correct its records to conform to the court's direction.

When the present San Francisco charter was adopted (Stats. 1931, pp. 2973, 3064) section 146 (found under "Civil Service"— "Promotions") read as follows: "Whenever it deems it to be practicable, the commission shall provide for promotion in the service on the basis of such examinations and tests as the commission may deem appropriate, and shall, in addition, give consideration to ascertained merit and records of city and county service of applicants. The commission shall announce in the examination scope-circular the next lower rank or ranks from which the promotion may be made. All promotions in the police and fire departments, respectively, shall be made from the next lower rank on the basis of examinations and tests, seniority of service and meritorious public service being considered."

In consonance with the requirement that consideration be given "to ascertained merit and records of city and county service of applicants," the commission adopted a schedule which prescribed the points or percentages to be deducted from an applicant's score if his departmental record showed that disciplinary action had been taken for certain offenses or derelictions of duty. These deductible points were worked out according to the nature and gravity of the infraction, and the schedules remained in effect and were applied uniformly for a number of years.

In 1941 section 146 was amended (Stats. 1941, pp. 3250, 3269-70). The first two sentences quoted above were not substantially altered, but the third sentence was dropped and the following added: "Except as specifically provided in other sections of this Charter, all promotions . . . shall be made from the next lower civil service rank attained by examinations, . . . giving consideration also to meritorious public service and seniority of service. All such promotive examinations . . . shall be entirely of a written character, and all questions asked or problems given in said examinations shall pertain to matters concerning the duties of members of the department for which the examination is held." After prescribing credits for seniority of service the amendment continues:

"(d) In addition to the foregoing credits for seniority, ten per cent of the total credits allowed for said examinations shall be allowed for ascertained merit and meritorious public service; *sixty per cent of said ten per cent to be allowed to each applicant for a clean record in the department,* and forty per cent of said ten per cent shall be the maximum which may be allowed for acts of meritorious public service according to the judgment of the Commission." (Emphasis added.)

The first examination after the amendment, for promotion from sergeant to lieutenant of police, was held on March 6, 1942, and petitioner took it. The scope circular, available to all candidates, stated that 100 points out of the highest possible 1,000 would be credited for ascertained merit and meritorious public service—"Credits to be allocated in accordance with provisions of section 146 of the Charter." It did not contain, as had the scope circulars before the amendment, any schedule showing how many points would be deducted for past infractions, depending on the nature and gravity of the offense.

The commission decided in advance of the examination that the passing score would be determined by the lowest score among the 25 highest candidates, and this passing mark turned out to be 693.04 points. The petitioner's score was 661.64. The record of the petitioner in the department disclosed that in 1938 he had been before the police commission for disobedience of an order, and had been fined $100 therefor. In computing petitioner's score the civil service commission treated this offense as depriving him of *all* 60 points (see charter, *supra*, "sixty per cent of said ten per cent to be allowed . . . for a clean record . . ."). Under the schedule contained in the preamendment rules, petitioner would have been entitled to 40 points (a 20-point deduction from 60, because of the offense), which 40 would have brought him up to 701.64, and with his veteran's preference of 30 points added he would have had a score of 731.64, which would have put him in fourteenth place in point of relative excellence and safely on the eligible list for promotion.

The petitioner filed a protest based on the fact that for many years prior to this examination the commission had adhered to the schedule above referred to (by which he would have been entitled to 40 points) and should still do so. At the hearing of the protest the president of the commission explained that they had followed an opinion of the city attor-

ney which held that the amendment had effected a change and that if a candidate did not have a "clean record" he was entitled to no fractional part of the 60 per cent of the 10 per cent; that the amendment left no room for discretion, but was mandatory on the commission. The president stated further, in disallowing the protest, that if this opinion were reversed by the city attorney or the courts, the commission would treat petitioner's case the same as cases which had arisen under the preamendment rules.

Eleven months after the examination, an action for declaratory relief was commenced by Gerald Flynn, as secretary of the San Francisco Police Officers' Association, on behalf of himself and its 1,300 members (of whom the petitioner was one) against the civil service commission, its members, and the city and county of San Francisco. The complaint therein alleged that the questions to be determined were of common and general interest to all 1,300 members; it alleged the general situation just stated; the holding of the examination (without referring to this petitioner or the score he made or any other scores or percentages); the departure therein from the old, preamendment schedules; the commission's threat to no longer apply the old rules to future examinations, but its intention to hold that any offense which marred a "clean record" deprived the candidate of the *whole* 60 per cent of 10 per cent; and it stated that such position would be detrimental to the morale and discipline of the members of the police department.

In setting out the "controversy" the opposing contentions of the 1,300 officers and of the commission, with respect to the meaning of the amendment, are stated. Nowhere is Sergeant Conroy's name mentioned. Nowhere does it appear that he is the person "who desires a declaration of his rights or duties with respect to another" (Code Civ. Proc., § 1060) or that there exists any controversy between himself and the civil service commission. The prayer asks for "a determination that the said Commission has the right and duty *to exercise its discretion*" in computing deductions.

After making findings, the court entered a judgment declaring that under the amendment the commission "has discretion to determine whether all or only a part of the 'sixty per cent of said ten per cent,' allowed for a clean record, should be deducted from an applicant in an examination who has not a clean record; and should the commission determine

to deduct only a part of the 'sixty per cent of said ten per cent' from an applicant in an examination who has not a clean record, then the commission may exercise its discretion in determining how much thereof to deduct, and in the exercise of this discretion may take into consideration the nature and gravity of the offense with which the applicant has been charged." Further, that the "Commission has the power, authority and discretion to determine what constitutes a clean record and/or an unclean record. . . ." Judgment went for the plaintiff "as herein related."

There was no appeal.

The judgment-roll in that case went into evidence in this case by stipulation, and the judgment is strongly relied on by respondent.

The allegations and prayer of the complaint show clearly that what was sought was a declaration whether section 146 as amended vested in the commission the power and discretion to determine that a candidate—*any* candidate—for promotion should be rated with respect to "clean record" according to percentages based on the gravity of his prior infractions or offenses—as had been the case before the amendment—or whether, on the other hand, the amendment rendered the 60 per cent of 10 per cent a fixed and static factor, beyond the reach of rules or ratings by the commission and beyond the scope of its discretion. What was really sought was an advisory opinion applying to all 1,300 members, generally, without regard to any acute, specific or pending controversy, so that there would be available and ready for use in any dispute arising in the future a judicial interpretation of the 1941 amendment.

A reading of the declaratory judgment shows that it did not adjudicate an "actual controversy relating to the legal rights and duties of the respective parties." (Code Civ. Proc., § 1060.) It passed upon the differences of opinion between the 1,300 members on the one hand, and the civil service commission on the other as to how the 1941 amendment should be interpreted. Nowhere in the judgment is Sergeant Conroy's name mentioned, nor is his controversy with the commission stated. The judgment says that the commission "has discretion to determine whether all or only a part of the 'sixty per cent of said ten per cent' " should be deducted from *an* applicant—*any* applicant—and it makes

the hypothetical declaration that *"should the commission determine to deduct,"* then it can say how much should be deducted. It says that in exercising its discretion the commission "may take into consideration the nature and gravity of the offense with which the applicant has been charged"— meaning, of course, any hypothetical applicant. It says, also, that the commission has the discretion to determine what constitutes a clean or an unclean record.

The decree does not adjudicate whether Sergeant Conroy, or the plaintiff Gerald Flynn, or any of the 1,300 members has the *right* to be certified to any eligible list or is entitled to so many points, or that it is the *duty* of the commission to so certify or to award such points. It passes only upon an abstract question of law—to wit, the interpretation of section 146 as amended—without settling or declaring anybody's legal *rights,* or ordering that anything be done.

The record shows, however, that in the present mandate case it was treated as a final judgment. In a colloquy this appears: "Mr. Purcell: That has been interpreted by the Flynn case. The Court: Yes, that has been interpreted by the Flynn case, and it is final." Moreover, in the instant case the court made a finding that after this petitioner's protest had been overruled the case of *Flynn* v. *Civil Service Commission* was tried and findings and judgment therein entered in favor of that plaintiff and that "no further proceedings were taken in said matter and said judgment is a final judgment."

In Borchard on Declaratory Judgments, second edition, 1941, the author says: "It has already been observed that an action for a declaratory judgment must exhibit all the usual conditions of an ordinary action, except that accomplished physical injury need not necessarily be alleged. It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served. The requisites of justiciability must be present.

"Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim. Unless the parties

have such conflicting interest, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable.''

In *Monahan* v. *Department of Water and Power*, 48 Cal. App.2d 746, 751 [120 P.2d 730], it is said: ''. . . We may well observe that not only must the controversy be a justiciable controversy, as distinguished from 'a difference or dispute of a hypothetical or abstract character; from one that is academic or moot,' but it must be 'definite and concrete, touching the legal relations of the parties having adverse legal interests.' (*Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227 [57 S.Ct. 461, 81 L.Ed 617, 108 A.L.R. 1000].) In short, the controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do. While ordinances and statutes are inherently proper subjects of declaratory relief, yet a declaratory judgment may not be rendered in respect to them in disregard of the customary limitations upon the granting of such relief.'' (*Aetna Life Ins Co.* v. *Haworth*, therein cited, contains at 300 U.S. pp. 240-1 and 81 L.Ed. pp. 621-2 a full statement of the rule. See, also, 5 Cal.Jur. 10-Year Supp. (1944 Rev.) p. 115 et seq.; 16 Am. Jur. §§ 9, 10, pp. 282-284; *Deming* v. *Communist Party*, 64 Cal.App.2d 35, 38 [148 P.2d 135].) In *Frederick* v. *North Side Water Co.*, 49 Cal.App.2d 489, 491 [122 P.2d 59], it is said: ''. . . It is not enough that there be a controversy. It must be justiciable. Moreover, the specific claims made must be set forth together with the ultimate facts to sustain them.'' ''The purpose of the declaratory judgment is to 'serve some practical end in quieting or stabilizing an uncertain or disputed jural relation' [citations].'' (*Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753, 760 [161 P.2d 217].)

We are satisfied that the declaratory judgment in the Flynn case did not adjudicate any rights or duties and that the finding herein that ''there exists a Final Judgment determining said petitioner's right to have said Civil Service Commission exercise said discretion'' was erroneous.

Soon after the declaratory judgment (and no doubt because of it) the commission adopted a new schedule of deductions based upon ''the severity of the disciplinary penalty levied

by the Police Commission." This new schedule prescribed 30 points as deductible in all cases where a $100 fine had been imposed (the Conroy fine was $100), and if this new schedule had been applied to the Conroy examination his score would have still been below the passing mark.

The judgment in the instant case orders a peremptory writ directing the commission and the city and county "to place said John H. Conroy upon the list of eligibles for promotion to the rank of lieutenant . . . and requiring said respondents . . . to place the name of said John H. Conroy upon said eligible list as No. 14 in position thereon and to certify said John H. Conroy for appointment to rank of lieutenant following the certificate for appointment of said thirteen persons named upon said eligible list with a higher ranking than said John H. Conroy, and to correct their records accordingly, by allowing to said John H. Conroy, 40% of the 10% . . . , the same being forty (40) points in the marking of said examination, together with a credit of 3%, to which said John H. Conroy is entitled as a veteran of World War No. 1, the same being thirty (30) points in the marking of said examination." That this judgment compels the civil service commission to act in a particular manner cannot be gainsaid.

The appellants invoke the settled and familiar rule recently restated in *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 315 [144 P.2d 4] as follows:

"It is the general rule that the writ of mandamus may not be employed to compel a public administrative agency possessing discretionary power to act in a particular manner. The court in response to appropriate application may compel such agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency. (16 Cal.Jur. 809, § 28, and cases there cited; 34 Am.Jur. 856, § 68, with supporting authority.) In a proceeding of this character, challenging the propriety of decision of an administrative board, the attitude of the courts is well stated in the following language found in the case of *Maxwell* v. *Civil Service Commission,* 169 Cal. 336, 339 [146 P. 869].) : 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' " (See, also, cases there cited.)

The respondent frankly admits this rule but claims that this case comes within the exception stated in *Bank of Italy* v. *Johnson*, 200 Cal. 1, 31 [251 P. 784], as follows:

"An important exception to the foregoing general rule is that if the facts as admitted or proved be susceptible of but one construction or conclusion the right to the writ becomes a matter of law and the officer may be compelled to act in accordance with the facts as admitted or established (*Dufton* v. *Daniels,* 190 Cal. 577, and cases cited on page 581 [213 P. 949].) Cases further illustrating the exception to the general rule are *Inglin* v. *Hoppin,* 156 Cal. 483 [105 P. 582], *Hammel* v. *Neylan,* 31 Cal.App. 21 [159 P. 618], and *Walker* v. *Kingsbury,* 36 Cal.App. 617 [173 P. 95]." See, also, *Klevesahl,* v. *Byington,* 1 Cal.App.2d 671, 677 [37 P.2d 179], where it is restated in almost identical language. In both of these cases, cited by respondent, the court held the question discretionary and refused to issue the writ.

Neither of these cases nor the four cases cited in the Bank of Italy opinion aids the respondent. The best illustration of the way the exception works is found in *Inglin* v. *Hoppin,* where the plaintiffs, before the supervisors, made the showing required by the statute for the establishment of a new reclamation district. Despite this the board refused to form the district. The court held that all the petitioners had to do in the mandate case was to prove in court that they had made the requisite statutory proof before the board, and if they did that the court must grant a peremptory writ directing the board to form the district.

*Dufton* v. *Daniels* and *Hammel* v. *Neylan* were cases where the state board of examiners or control had refused to audit valid claims against the state. In each case the court held that the claimant had fully complied with the statutory requirements and that the plain duty rested on the board to audit the claims. *Walker* v. *Kingsbury* is not at all in point.

None of the authorities cited by respondent touches a situation similar to that presented in the case at bar, and we are satisfied that none can be found. The instant case falls clearly within the rule, and not within the exception.

The limit of the powers of the trial court, if it finds the petitioner is entitled to relief—a question which we do not decide—would be to direct the commission to exercise its discretion in determining whether the petitioner is entitled to any part of the 60 points, and, if so, what part.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with these views.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied August 21, 1946, and respondent's petition for a hearing by the Supreme Court was denied September 16, 1946.