[Civ. No. 25012.   Second Dist., Div. Two.   Feb. 24, 1961.]

DAVID M. DAY, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

James J. Clancy for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Claude E. Hilker, Deputy City Attorney, for Respondents.

ASHBURN, J.—Plaintiff appeals from a judgment denying his prayer for mandamus. His objective is to effectuate an application for rezoning of his property from A2 to RA. Joined as defendants are the city of Los Angeles, the members of the city council, the city engineer, the director of planning and the superintendent of buildings. Upon the original petition the court on November 13, 1959, issued an alternative writ directed only to Lyall Pardee, the City Engineer, requiring him to transmit to the city council the draft of a proposed ordinance changing petitioner's property from zone A2 to RA or to show cause why he had not done so. The petition as amended sought a writ "directed to the respondents to do all acts required by law and to rezone the property included within said Tract 24316 from A2 to RA, and that respondent Superintendent of Buildings be required to issue such building permit to plaintiff."

Appellant's counsel defines the issue thus: "The trial court denied the relief sought, the essence being a writ directing the City Council to change the zone from A2 to RA as previously promised in their action of September 6, 1957 on the zone change application." He propounds, among others, the question: "Is Council action in refusing to adopt the proposed ordinance changing the zone from A2 to RA within the control of this court and subject to judicial compulsion?"

Plaintiff's land is a 2-acre parcel situated in Sun Valley in the city of Los Angeles. On May 23, 1957, he applied for a change of zone from A2 (2-acre) zoning to RA (½-acre) zoning. After hearing held the city council on September 6, 1957, adopted a report of its planning *committee* which stated that the planning *commission* had recommended the requested change subject to filing of a subdivision map; that the new zoning would be in accordance with the Master Plan Restudy for that area and could be justified on the basis

of sound zoning practice. The committee's report, so approved by the council, also provided: "1. That upon the filing of a tentative tract map of the subject property and the approval of same by the Director of Planning under the provisions of Ordinance No. 79,310, as amended, the City Attorney be instructed to prepare the necessary ordinance changing the zone from A2 to RA on a 2-acre parcel of land . . . and that he transmit same to the City Engineer.

"2. That the City Engineer be instructed to hold said ordinance and present same to the Council for adoption simultaneously with the presentation for approval of the final tract map of said property.

"3. That after adoption of the zone change ordinance and final approval of said tract map, the City Engineer be further instructed to withhold recordation of the tract map until the rezoning ordinance has been published. . . .

"4. That a copy of the tentative tract map and information concerning driveway locations be submitted to and approved by the Department of Traffic."

Plaintiff thereupon employed a licensed civil engineer to prepare a subdivision map and incurred other expenditures. A tentative map was filed on November 12, 1957. The director of planning having failed to act within the time prescribed by law for imposing conditions upon approval of the map (Bus. & Prof. Code, § 11553), the city clerk certified the same as required by the statute. It was never approved by the department of traffic in the submitted form. On January 21, 1958, said tentative map was approved by the director of planning subject to various conditions "among which were conditions calling for the compliance with municipal requirements relative to drainage, sewers, fire prevention and other improvements."

A final tract map was filed in February, 1958, which carried an offer of dedication of a strip of land 2½ feet wide along LaTuna Canyon Road. On August 12, 1958, the city engineer by endorsement thereon certified that all provisions of state law and local ordinances had been complied with; but in his letter of transmittal of same to the city council he said: "I certify as to the correctness of said map and transmit same to your Honorable Body despite the fact that recordation of the tract without an accompanying change of zone will result in the creation of illegal-sized lots in violation of the City Zoning Ordinance." On September 23, 1958, the council approved this final map and it was recorded on the next day.

On September 12, 1958, the director of planning had transmitted the zone change ordinance to the council with a recommendation "that it not be adopted because, without the necessary improvements, such a zone change would not conform with good zoning practice." On October 30, the council adopted a report of its planning commission which said, in part: "The Director, on January 13, 1958, approved the tract, but imposed with his approval certain conditions requiring street improvements, sewers, etc. . . . However, *the change of the property to the RA Zone without the provision of necessary improvements would not conform with good zoning practice, and could therefore not meet the requirements for a change of zone established by Section 12.32 of the Municipal Code.*" Also: "In view of the above and in accordance with the recommendation of the Planning Commission, we RECOMMEND that the accompanying ordinance not be adopted and ordered filed. We FURTHER RECOMMEND that Council action of September 6, 1957, in connection with this matter be rescinded, the rezoning proceedings be terminated and thereafter the matter be filed."

The Pardee answer alleged that at the time of transmitting the final subdivision map to the city council (August 12, 1958, more than a year before issuance of the alternative writ), "he did not have the subject zone change ordinance in his possession so as to enable him to transmit same to the City Council; that on the contrary by letter dated September 12, 1958, the Director of Planning on behalf of the City Planning Commission transmitted said zone change ordinance to the City Council with a recommendation that it not be adopted because, without the necessary improvements, such a zone change would not conform with good zoning practice." No replication to this answer was filed nor were its allegations otherwise controverted in any manner. Hence they must be taken as true. ▮▮▮ *Kimberlin* v. *Los Angeles City High School Dist.*, 115 Cal.App.2d 459, 464 [252 P.2d 344]: "Section 1091 of the Code of Civil Procedure provides that on trial of a proceeding in mandamus 'the applicant is not precluded by the answer from any valid objection to its sufficiency and may countervail it by proof either in direct denial or by way of avoidance.' Under this section 'affirmative allegations of the answer are to be taken as true, unless they are countervailed by pleading or proof *presented by the petitioner*; to this extent the answer may be considered as if it were evidence.'" See also *McClatchy* v. *Matthews*, 135 Cal. 274, 276 [67 P. 134]; *Hunt* v. *Mayor & Council of City of*

*Riverside,* 31 Cal.2d 619, 623 [191 P.2d 426]. ▮ The engineer was unable to comply with the alternative writ and hence the court concluded "[t]he City Engineer had no duty to transmit the subject zone change ordinance to the City Council," and entered judgment that plaintiff is not entitled to a peremptory writ herein. The McClatchy case, *supra,* establishes the soundness of this ruling so far as the city engineer is concerned.

The court further found: "It is true that prior to the institution of the instant proceedings, the City Council terminated the zone change proceedings relative to the subject property and ordered the matter filed," and concluded: "The rezoning proceedings having been terminated, the presentation by the City Engineer of the proposed ordinance is unnecessary in any event."

▮ The correctness of the judgment as to defendants other than Pardee is likewise manifest. It becomes apparent from the answer to the question primarily posed by appellant's counsel: "Is Council action in refusing to adopt the proposed ordinance changing the zone from A2 to RA within the control of this court and subject to judicial compulsion?" Obviously the refusal to adopt this zoning ordinance was the exercise of a discretion residing in the city council. The extracts from the record above set forth show that good cause, or what reasonably appeared to be such, was revealed in the planning commission's report which was approved by the city council on October 30, 1958, and is quoted above.

▮ It is established law of this state that the courts cannot coerce legislative action upon any matter that involves exercise of discretion by the legislative body. ▮ *City Council* v. *Superior Court,* 179 Cal.App.2d 389, 394 [3 Cal. Rptr. 796]: "This language and similar expressions found in numerous other cases upholding interference with legislative action is directed toward the right to undo what the legislative or quasi legislative body has done, not toward directing it to perform an act which is prospective in operation. . . . The commanding of specific legislative action is beyond the power of the courts for it would violate the principle of division of powers of the three governmental departments. Upon the level of the Legislature itself the rule seems well established." At page 396: "Upon the municipal level the same rule obtains. The enactment of an ordinance or performance of any other legislative or quasi legislative function is but the exercise, through delegation,

of a part of the legislative power of the state. It cannot be controlled by the courts.'' In this opinion numerous cases are reviewed which sustain the rules above quoted.

The case of *Inglin* v. *Hoppin*, 156 Cal. 483 [105 P. 582], cited by appellant, is not opposed. It merely affirms the right of the courts to compel action by subordinate agencies, such as a board of supervisors, where the facts establish without contradiction that the board's function has become administrative rather than discretionary. Such is the appraisal of this case in *Drummey* v. *State Board of Funeral Directors*, 13 Cal.2d 75, 83 [87 P.2d 848] : ''As distinguished from the above cases, it is equally well settled that where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial, and upon the happening of the contingency the writ may be issued to control his action. (. . . *Inglin* v. *Hoppin*, 156 Cal. 483 [105 P. 582] ; 16 Cal.Jur., p. 812, § 30.) ''

*Conroy* v. *Civil Service Com.*, 75 Cal.App.2d 450, 458 [171 P.2d 500] : ''The respondent frankly admits this rule but claims that this case comes within the exception stated in *Bank of Italy* v. *Johnson*, 200 Cal. 1, 31 [251 P. 784], as follows: 'An important exception to the foregoing general rule is that if the facts as admitted or proved be susceptible of but one construction or conclusion the right to the writ becomes a matter of law and the officer may be compelled to act in accordance with the facts as admitted or established. (*Dufton* v. *Daniels*, 190 Cal. 577, and cases cited on page 581 [213 P. 949].) Cases further illustrating the exception to the general rule are *Inglin* v. *Hoppin*, 156 Cal. 483 [105 P. 582]. . . .' ''

Such cases as *City Council* v. *Superior Court, supra*, and those reviewed are controlling here. The court correctly concluded that ''[t]he enactment of a zoning ordinance is a legislative, not a ministerial, act and is not controllable by a mandate proceeding.''

We have not overlooked other questions argued by counsel; we deem it unnecessary as well as unprofitable to discuss them.

Judgment affirmed.

Fox, P. J., concurred.

A petition for a rehearing was denied March 15, 1961, and appellant's petition for a hearing by the Supreme Court was denied April 19, 1961.