[No. A043124. First Dist., Div. Three. July 27, 1989.]

BETTER ALTERNATIVES FOR NEIGHBORHOODS, Plaintiff and Appellant, v.
IRA MICHAEL HEYMAN, as Chancellor, etc., et al., Defendants and Respondents.

NYINGMA INSTITUTE et al., Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant and Respondent.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

664

**COUNSEL**

Michael H. Weiss, Zach Cowan, Roger Beers, Cynthia Kochler and Jack Petranker for Plaintiffs and Appellants.

Orrick, Herrington & Sutcliffe, Jeffrey S. White, George A. Yuhas, Timothy P. Walker, James E. Holst and Gary Morrison for Defendants and Respondents.

**OPINION**

**WHITE, P. J.—**

### Introduction

Petitioners Better Alternatives for Neighborhoods (BAN) and the Nyingma Institute[1] (collectively appellants) appeal after the trial court denied their consolidated petitions for a writ of mandate to set aside the University of California's (University) decision to approve a student housing project located near the University's main Berkeley campus. We affirm the judgment.

---

[1] Four individual petitioners are also named as parties to the suit brought by the Nyingma Institute.

The instant appeal concerns the University's decision to construct the Foothill Student Housing Project northeast of the main Berkeley campus. The project, which will house approximately 740 students, consists of 4 components: (1) a new complex housing approximately 330 students at the La Loma/Ridge site; (2) 2 new buildings housing approximately 410 students at the Hillside site; (3) remodeling and expansion of the existing Stern Hall kitchen facilities and (4) renovation of the interior of Bowles Hall. (See map attached as Appen. A, *post,* at p. 674.)

Appellants contend that the University should not have approved the project because it does not comply with the Alquist-Priolo Act Special Studies Zones (hereafter Alquist-Priolo Act) and its implementing regulations, which prohibit the construction of structures for human occupancy across the trace of an active fault or within 50 feet of an active fault. (Pub. Resources Code, § 2621.5; Cal. Code Regs., tit. 14, § 3603, subd. (a).)[2] In particular, appellants contend that the so-called "Louderback Trace"[3] of the Hayward Fault—which runs directly below a portion of the proposed La Loma/Ridge complex—has not been shown to be inactive, and consequently an appropriate setback is required. In addition, appellants contend that the Environmental Impact Report (EIR) prepared for the project is inadequate in several respects. We conclude that the EIR is adequate and that the University did not violate the setback provision of the Alquist-Priolo Act.

## STATEMENT OF FACTS

The Foothill Student Housing Project is one part of a comprehensive plan to help ease a severe shortage of student housing at the Berkeley campus. The Foothill site was chosen as the preferred site because, among other reasons, it is relatively free of existing development, is close to the campus, and is large enough to support a common dining facility.

### A. *Pre-EIR Geotechnical Investigation.*

Planning for the project began in earnest in the fall of 1986 when the University engaged Harding Lawson Associates (HLA), a geotechnical engineering firm, to investigate the La Loma/Ridge and Hillside sites to identify and evaluate potential geologic hazards. ■■■■ In particular, HLA attempted to identify and locate the active traces of the Hayward Fault, which was known to run near the project area, so the University could comply with the Alquist-Priolo Act in siting the buildings.[4] After performing an extensive analysis of the project area HLA

---

[2] Subsequent statutory references are to the Public Resources Code unless otherwise noted.

[3] The trace is described alternatively throughout the record as the "Louder*back*" and "Louder*bach*" Trace. We adopt the former spelling since it is the most often used.

[4] As previously mentioned, the Alquist-Priolo Act (Pub. Resources Code, §§ 2621-2630) through its implementing regulations prohibits the placement of structures across or within

located the active traces of the Hayward Fault in the vicinity of the project. Based upon its preliminary investigation, HLA concluded that development of the sites was geotechnically feasible as long as appropriate setbacks were maintained between the main trace of the Hayward Fault and any structure. The University engaged a second firm with special expertise in seismic geology and earthquake engineering—Geomatrix—to independently review HLA's methodology and findings. Geomatrix concurred in HLA's conclusions regarding the location of the active traces of the Hayward Fault.

B. *Environmental Review Under CEQA.*

Environmental review of the project under the California Environmental Quality Act (CEQA) commenced in June of 1987 when the University began holding open meetings to inform the public of the proposed student housing project and to provide the community an opportunity to identify potential environmental impacts. Through these meetings and other avenues the University solicited and received substantial public input before the draft EIR was prepared and circulated for comment.

The draft EIR was distributed to the public for review and comment on November 24, 1987. The draft EIR contained extensive discussion of the seismic and geologic problems involved in constructing the project, as well as considerable discussion of eight alternative sites and other relevant environmental impacts.

In particular, the geology and seismicity section of the draft EIR noted that the Hayward Fault Zone traverses the project sites, that 2 major earthquakes had occurred on the fault in the last 150 years (in 1836 and 1868), and that the U.S. Geological Survey estimated there is a 20 percent probability the Hayward Fault would experience an earthquake of Richter magnitude 6.5 to 7.0 within the next 30 years. In addition, the draft EIR noted that detailed investigations had been undertaken to locate the active traces of the Hayward Fault in the project area and that two active traces had been located east of Bowles Hall and the Greek Theater (see map attached as Appen. B, *post,* p. 676). The draft EIR also noted that a third trace (the Louderback Trace) had been located in the area *underlying* the La Loma/Ridge complex, but that this trace appeared to be inactive (see Appens. A & B). This conclusion was based on a summary prepared by HLA (which was appended to the draft EIR) stating that the Louderback Trace "is judged as not active based on historic evidence such as past historic records, reports describing the conditions exposed in the Lawson adit

50 feet of an active fault trace, unless that area is proven to contain no active branches of the fault. (Cal. Code Regs., tit. 14, § 3603, subd. (a).) A fault is considered "active" if it has experienced earthquake activity within Holocene time, i.e., the last 11,000 years.

[a nearby mining tunnel], air photo interpretation, fault studies by others, analysis of topographic features, and observation of soil/rock exposure in two . . . recently excavated trenches." Because the Louderback Trace was determined to be inactive, the draft EIR concluded that "[n]one of the proposed structures would be located across known active trace(s) of the Hayward Fault . . . ."

During the period for public comment on the draft EIR, HLA completed a supplemental geological report which was made available to the public on January 13, 1988. This report contained a more detailed fault study than that prepared in the November 1986 report. It was based on 14 test borings for landslide evaluation and 14 test trenches totaling 1435 feet to identify and locate fault traces. Once again, HLA concluded in its supplemental investigation that the Louderback Trace is not active.

Written comments on the draft EIR were accepted until January 29, 1988. A total of 682 comments—both oral and written—were received from individuals, neighborhood groups and government agencies. Among those comments were two sets prepared by the California Department of Conservation's Division of Mines and Geology (DMG). The first set—which was prepared before HLA's supplemental geotechnical study was made available to the public—stated the DMG's view that the Louderback Trace is "potentially active." DMG's final comments were prepared after DMG had reviewed HLA's supplemental report. In these final comments, the DMG stated that the evidence regarding the activity of the Louderback Trace was inconclusive, and that additional field investigation might be necessary to determine whether the Louderback Trace is active.

The University responded in detail to DMG's comments in the response section of the final EIR and through a letter prepared by Geomatrix appended to the final EIR. These responses summarized and explained the evidence supporting the conclusion that the Louderback Trace is inactive.

The final EIR was made available to the public on February 12, 1988. As explained in that document, several aspects of the project were modified due to comment received from interested parties during the review process. In particular, the project was redesigned to reduce the height of certain structures in order to retain views as requested by the nearby Nyingma Institute, and building setbacks from known active traces of the Hayward Fault were increased to 50 feet, thus preventing any possible conflict with the Alquist-Priolo Act.

Comments on the final EIR were received until March 15, 1988.

C. *Certification of the EIR and Approval of the Project.*

After the comment period expired, the Regents of the University met to consider the president's recommendation that the site and design of the

project be approved. Five speakers, including representatives from BAN and the Nyingma Institute, spoke in opposition to the project. These speakers reiterated concerns about the project's seismic problems and its impact on the nearby Nyingma Institute. Despite these objections, the Regents certified the final EIR and approved the project.

## D. *Trial Court Proceedings.*

After the University approved the project, appellants filed their respective complaints for injunctive relief and petitions for a writ of mandate to force the University to set aside its certification of the EIR and its approval of the project. Both BAN and the Nyingma Institute alleged in their pleadings that the University had violated CEQA and the Alquist-Priolo Act in approving the project. The trial court immediately issued an order to show cause and a temporary restraining order enjoining the University from proceeding with the project.

About six weeks later, the trial court heard argument on appellants' motion for a preliminary injunction. Although the court concluded that the EIR was adequate in every respect, it was concerned that the University had failed to prove that the Louderback Trace is not active within the meaning of the Alquist-Priolo Act. This concern was apparently sparked by a comment in a letter prepared by Stephen R. Korbay of HLA (the University's own expert) to the effect that additional field investigations would be required to obtain "conclusive" evidence that the Louderback Trace is not active. Consequently, the trial court granted a preliminary injunction preventing the University from proceeding with the project, and ordered the University "to perform such work as they [reasonably] deem appropriate to ascertain whether the [Louderback] Trace is active or inactive." In addition, the court asked the DMG to review the supplemental report prepared by the University's consultants.

In response to the trial court's order, HLA conducted a further investigation of the Louderback Trace. This investigation included, among other things, the digging of two additional trenches to locate and evaluate the Louderback Trace, and the examination of man-made structures in the path of the trace for indications of lateral offset. Based on this supplemental study, HLA concluded that "the 'Louderback trace' is a zone of faulting that has not been active in Holocene time. The 'trace' is a zone of sheared bedrock and old colluvium that represents ancient faulting that occurred prior to Holocene time." Two additional geologic experts—Geomatrix and Dames & Moore—reviewed HLA's work, performed their own site investigations, and likewise concluded that the Louderback Trace (or shear zone) is not active.

The DMG and Professor Garniss H. Curtis of the University of California submitted extensive comments on the supplemental reports. Both the DMG and Professor Curtis questioned the conclusions of the University's experts that the Louderback Trace is inactive. For example, the DMG stated that HLA's conclusion that the Louderback Trace "is a zone of faulting that has not been active in Holocene time . . . has not, in our opinion been definitely proven, and may be inconsistent with some observations and interpretations of the site geology . . . ." Similarly, Professor Curtis concluded that "the Louderback Thrust Fault is presently active and will move again at the time of the next major earthquake . . . ."

The trial court reviewed the supplemental reports prepared by HLA, Geomatrix, Dames & Moore, the DMG and Professor Curtis and at a hearing held on July 12, 1988, announced its tentative decision to deny the writ and dissolve the preliminary injunction. The court concluded that "there is clearly substantial evidence to support [the] contention that [the Louderback Trace] is not active . . . ." Appellants then objected on the ground that the supplemental reports were inadmissible hearsay. To cure this defect, the parties stipulated that the reports would be received in evidence as if adopted by their authors and verified under oath. In addition, appellants made a request to cross-examine the University's experts which was denied by the trial court. At the conclusion of the hearing, the trial court made it clear that it was dissolving the preliminary injunction and denying the petition for writ of mandate but was not ruling on the request for a permanent injunction. Subsequently, however, the parties agreed to treat the court's ruling as dispositive of all claims alleged in appellants' petitions and a final judgment was entered.

Appellants' petition for writ of supersedeas and request for stay were denied by this court and this appeal followed.

## DISCUSSION

### I. *The Alquist-Priolo Act.*

We first address appellants' contention that the University violated the Alquist-Priolo Act by approving the project.

In general, the Alquist-Priolo Act is designed to "assist cities, counties and state agencies in the exercise of their responsibility to prohibit the location of . . . structures for human occupancy across the trace of active faults . . . ." (Pub. Resources Code, § 2621.5.) The State Mining and Geology Board has promulgated regulations in order to carry out this mandate. (Cal. Code Regs., tit. 14, § 3600.) In particular, the regulations provide: "No structure for human occupancy . . . shall be permitted to be placed

across the trace of an active fault. Furthermore, as the area within fifty (50) feet of such active faults shall be presumed to be underlain by active branches of that fault unless proven otherwise by an appropriate geologic investigation and report . . . no such structures shall be permitted in this area." (Cal. Code Regs., tit. 14, § 3603, subd. (a).) A "fault trace" is defined in the regulations as the "line formed by the intersection of a fault and the earth's surface"; a fault is considered "active" if it "has had surface displacement within Holocene time (about the last 11,000 years) . . . ." (Cal. Code Regs., tit. 14, § 3601, subds. (a) and (b).)

 Appellants contend that the University has violated the Alquist-Priolo Act because they have not "proved" that the Louderback Trace—which runs beneath the La Loma/Ridge site—is inactive. We reject this contention.[5]

The parties agree that the lead agency responsible for developing a project—in this case the University—has the ultimate responsibility to determine whether a project complies with the Alquist-Priolo Act and its implementing regulations. The DMG does not have direct authority to approve or disapprove geologic investigations, nor to approve or disapprove specific projects which might be built on or near faults. Consequently, we must determine whether the *University* properly concluded that the Louderback Trace is not active.

In essence, appellants are arguing that the University abused its discretion when it concluded that the Louderback Trace is not active because substantial evidence does not support this conclusion. ██ ██ █
 Although ordinary mandamus (Code Civ. Proc., § 1085)[6] will lie to correct an abuse of discretion by an administrative body (8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 82, p. 723; *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344, fn. 24

---

[5] We also reject appellants' contention to the extent they complain that structures will be placed within 20 feet of the active western trace of the Hayward Fault. As indicated in the Statement of Facts, the University has elected to increase the setback from the western trace to 50 feet in order to avoid possible conflict with the Alquist-Priolo Act.

[6] The University has pointed out that it is unclear from appellants' petitions whether they were seeking relief through traditional mandamus (Code Civ. Proc., § 1085) or administrative mandamus (Code Civ. Proc., § 1094.5). However, administrative mandamus only governs judicial review after an administrative order "made as the result of a proceeding in which by law a hearing is required to be given, . . ." (Code Civ. Proc., § 1094.5, subd. (a); *C.V.C.* v. *Superior Court* (1973) 29 Cal.App.3d 909, 918 [106 Cal.Rptr. 123].) The Alquist-Priolo Act does not appear to require a hearing before an administrative agency determines that a fault is inactive and appellants have not argued that a hearing is required. Consequently, we believe that traditional mandamus is the appropriate proceeding to challenge the University's determination that the Louderback Trace is inactive within the meaning of the Alquist-Priolo Act. (See *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 392, fn. 5 [253 Cal.Rptr. 426, 764 P.2d 278] (*Laurel Heights*).)

[124 Cal.Rptr. 513, 540 P.2d 609]; *Thelander* v. *City of El Monte* (1983) 147 Cal.App.3d 736, 748 [195 Cal.Rptr. 318]), the record does not establish that the University abused its discretion in this case. ■ "In determining whether an abuse of discretion has occurred, a court may not substitute its judgment for that of the administrative board [citation], and if reasonable minds may disagree as to the wisdom of the board's action, its determination must be upheld [citation]." (*Manjares* v. *Newton* (1966) 64 Cal.2d 365, 370-371 [49 Cal.Rptr. 805, 411 P.2d 901].) ■ Moreover, where the challenge rests on claimed insufficiency of the evidence, the court does not have the power to judge the intrinsic value of the evidence or to weigh it. (*Delta Rent-A-Car Systems, Inc.* v. *City of Beverly Hills* (1969) 1 Cal.App.3d 781, 787 [82 Cal.Rptr. 318].) Instead, review is limited to determining whether substantial evidence supports the administrative body's findings. (*Ibid.*)

■ Appellants ignore the proper standard of review in this case and instead embark upon a detailed critique of the reports prepared by the University's experts. We need not examine their arguments in detail, since they are in effect contending that the opinions of the DMG[7] and Professor Curtis are more credible than those of the University's experts. ■ Even were we to agree with this contention, we have no power to substitute our judgment for that of the Regents of the University. (*Manjares* v. *Newton, supra,* 64 Cal.2d at pp. 370-371.) That is, although we have power to correct abuses of discretion by an administrative board, "mandamus will not lie to control the discretion of a court or officer, meaning by that that it will not lie to force the exercise of discretion in a particular manner . . . ." (*Inglin* v. *Hoppin* (1909) 156 Cal. 483, 491 [105 P. 582], original italics omitted.) ■ The University's conclusion that the Louderback Trace is inactive is clearly supported by substantial evidence, and does not amount to an abuse of discretion. During the EIR process, both HLA and Geomatrix prepared reports which concluded that the Louderback Trace (or shear zone) is inactive within the meaning of the Alquist-Priolo Act. The fact that the DMG found the evidence regarding inactivity inconclusive and that Professor Curtis believes the Louderback Trace (or shear zone) is active does not render the opinions of the University's experts insubstantial.[8] In short, we find that the University's conclusion that the

---

[7]Appellants suggest that because of the DMG's expertise and statutory responsibilities its views should be given "substantial deference." Appellants have not explained precisely what they mean by "substantial deference." If it means that, on review, we must accept the opinion of the DMG over the opinions of other geologic experts, we reject their argument. In our view the DMG's analysis is entitled to no more weight than that of any other expert.

[8]To paraphrase our Supreme Court's discussion in *Laurel Heights, supra,* "[t]he relevant point . . . is not that the . . . studies might be lacking in certain particulars or that the studies may not conclusively demonstrate [that the Louderback Trace is inactive]. Stated differently, the issue is not whether the studies are irrefutable or whether they could have

Louderback Trace is inactive is supported by substantial evidence. ■ ■ ■ ■ Consequently, no abuse of discretion occurred and our inquiry ends there.[9]

## II., III.*

. . . . . . . . . . . . . . . . . .

## IV. *Disposition.*

The judgment is affirmed.

Merrill, J., and Strankman, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 1989.

---

been better. The relevant issue is only whether the studies are sufficiently credible to be considered *as part of* the total evidence that supports the Regents' finding [that the fault is inactive]." (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 409, italics in original.) We believe the studies prepared by the University's experts clearly meet this standard.

[9] Indeed, we believe the honorable trial court may have exceeded its authority when it ordered supplemental reports be prepared to more conclusively prove that the Louderback Trace is inactive. In our view, the reports prepared during the EIR process were sufficient to support the University's conclusion that the Louderback Trace is inactive. Consequently, the trial court had no authority to interfere with the University's exercise of discretion. (*Manjares* v. *Newton, supra,* 64 Cal.2d at p. 370; *Thelander* v. *City of El Monte, supra,* 147 Cal.App.3d at p. 748.)

* See footnote, *ante,* page 663.)

APPENDIX A

FIGURE 2-2

APPENDIX A (Cont'd)

---

**PROJECT PLAN** **FIGURE 2-6**

---

LA LOMA/RIDGE COMPLEX

HILLSIDE

PARKING

STERN HALL
ADDITION

BOWLES HALL ANNEX

☐ PROJECT BUILDINGS

BOWLES HALL RENOVATION

SCALE ▭▭▭▭ FEET
0 100 300

Appendix B

---

## LOCATION OF FAULT TRACES FIGURE 4-4

ACTIVE HAYWARD FAULT TRACE
FAULT TRACE (LOUDERBACH)
TRENCH LOCATIONS

PROJECT SITES

SCALE ⎯⎯ FEET
0 500