[Civ. No. 8838.    First Appellate District, Division One.—October 31, 1934.]

MILLARD J. KLEVESAHL, Respondent, v. LEWIS F. BYINGTON et al., Appellants.

John J. O'Toole, City Attorney, Edmond P. Bergerot, Assistant City Attorney, John R. Golden, Assistant District Attorney, and E. R. Zion for Appellants.

Walter H. Duane, Joseph T. Curley and Marvin C. Hix for Respondent.

GRAY, J., *pro tem.*—The Civil Service Commission (hereinafter called the commission) and the Board of Police Commissioners (hereinafter called the board) of the City and County of San Francisco, appeal from a judgment, directing the issuance of a peremptory writ of mandate, commanding the commission to certify respondent to the board, as eligible for appointment as a policeman, and the board to make such appointment. Except on the issue of respondent's character, the evidence raises no conflict of fact and so this appeal principally requires the interpretation of certain provisions of the former charter of 1899.

On September 25, 1928, the commission adopted, "subject to moral character investigation to be made by the chief of police", a list or register of persons, eligible to appointment as policemen, which contained respondent's name. Re-

ports, made in October, 1928, to the chief by officers requested to make such investigation, disclosed (1) that, in 1919, respondent had been arrested for robbery, declared a ward of the juvenile court and released upon probation, which was vacated after twenty months, (2) that, in 1923, he had been arrested on the charge, subsequently dismissed in the police court, of possessing liquor in violation of the State Prohibition Enforcement Act and (3) that, in 1927, he had been tried for a violation of section 112 of the California Vehicle Act, and after the jury disagreed, the charge had been dismissed. On July 22, 1929, the commission certified his name, to the board, as eligible for appointment. The board, on August 5, 1929, held a hearing at which the police records of the above arrests and the testimony taken in the juvenile proceedings and given by respondent in the trial of his accomplice in the robbery were introduced. Respondent introduced letters from three former employers and the pastor of his parish vouching for his good character and recommending his appointment. The business agent of his union, two former employees and a family friend each testified to his good character over a period of ten years. Respondent, as a witness, claimed that he had been exonerated of the robbery, denied any knowledge of it and stated that the third charge had been dismissed after the jury disagreed. The board, by a resolution passed on August 12, 1929, found respondent to be ineligible because of bad character for honesty and sobriety, refused to appoint him and requested the commission to remove his name from the eligible list.

After considering the matter at several meetings, the commission, on November 13, 1929, submitted the request but reached no decision until after the appointment of two new members. Further consideration of the request was given by the commission, as constituted after the appointments, at its meeting of January 21, 1931, at which the written evidence, presented to the board, was introduced. In addition, an officer testified to respondent's second arrest in a place described by another officer as a "bootlegging flat", and three officers swore that respondent was intoxicated when his automobile collided with a police car, as charged in the third arrest. At a hearing held on February 25, 1931, the same business agent and three new witnesses each testified to respondent's good character for the prior ten years. Respond-

ent also explained that he had been drinking when arrested for robbery; denied that he was intoxicated at the time of the collision, which he claimed was caused by skidding due to rain; and denied the place where he was arrested the second time was a "bootlegging flat" and stated that he occasionally visited its owner to play cards and drink beer. On May 27, 1931, the commission canceled respondent's certification and removed his name from the list of eligibles. Thereafter respondent instituted this proceeding in *mandamus* and, after a trial, in which the records of the commission and the evidence adduced before it were introduced, recovered judgment.

At all times since the adoption of the charter, article VIII, chapter I, section 3, under whose purported authority the board acted, has read, in part, as follows: "No person shall become a member of the department unless he shall be . . . of good character for honesty and sobriety . . . " Neither here nor elsewhere does the charter expressly empower the board to determine the existence or nonexistence of this qualification to appointment. Article XIII, section 9, approved March 28, 1913, provides that "the Commission shall not certify the name of any person who in the judgment of the Commission is not of good moral character . . . ; and having certified such person shall cancel such certification; and the Commission shall remove the name of any such person from all civil service registers". ▮ Good moral character includes all elements essential to make up such character, among which are honesty and sobriety. (*In re O——*, 73 Wis. 602 [42 N. W. 221].) ▮ Any construction of both sections which would grant to the board and the commission equal power to pass upon the same qualification would lead to useless duplication in case of their agreement and hopeless confusion in case of their disagreement. Any doubt of the commission's exclusive power in the matter of qualification is removed by consideration of article XIII, section 10, which requires the board to appoint from the list certified by the commission. The board has no right to pass upon a matter of qualification whose determination is confided to the commission, nor to review the commission's decision thereon. (*Pratt* v. *Rosenthal*, 181 Cal. 158 [183 Pac. 542].) Since the board lacked power to pass upon respondent's character, its order, finding him of bad character

for honesty and sobriety and refusing to appoint him for that reason, was a nullity.

The commission adopted the eligible list with the proviso that it was "subject to moral character investigation by the chief of police". Section 5 of article XIII seems sufficiently broad so as to authorize the commission to designate the chief of police to make such investigation and report the same to it. Even in absence of such express authority, the commission would have implied power to so employ him. (43 C. J. 512.) Section 7 of the same article, however, imposed the duty of determining respondent's moral character, from such report or otherwise, upon the commission. The performance of this duty it could not delegate. (21 Cal. Jur. 881.) But the wording of the proviso shows no illegal delegation of power but merely the lawful employment of the chief of police to gather information for the use of the commission in discharging its duty. From its unqualified certification of respondent to the board, it must be presumed that the commission, in obedience to the mandate contained in said section 9, found respondent to be of good moral character. (21 Cal. Jur. 898.)

The change in the members of the commission is immaterial since it was a continuing body. (18 Cal. Jur. 891.) Unless the charter authorized such action the commission could not cancel respondent's certification and remove his name from the eligible list. (*Cook* v. *Civil Service Com.*, 160 Cal. 598 [117 Pac. 662].) On the other hand, if the charter granted such power, the commission had the authority to make its order of May 27, 1931. (*Mann* v. *Tracy*, 185 Cal. 272 [196 Pac. 484] ; *Uhte* v. *Rosenthal*, 37 Cal. App. 519 [174 Pac. 83].) Such grant of power is found in the third sentence of said section 9, which provides that the commission shall cancel the certification of a person whom it had previously determined to be of good moral character, upon subsequently finding him to be otherwise.

Since the same sentence also expressly provides that the person certified shall "in the judgment of the Commission" be of good moral character, the commission is invested with discretion in making its determination. (*Stanley-Taylor Co.* v. *Board of Supervisors*, 135 Cal. 486 [67 Pac. 783].) The determination of respondent's character necessarily required an examination of evidence and a decision of

law and fact and therefore was not ministerial. (38 C. J. 598.) ■ It is the general rule that the writ of mandate may not be employed to compel a subordinate board or commission possessing discretionary power to act in a particular way. The court may compel it to act but it may not substitute its discretion for the discretion of the board or commission. An important exception to the rule, however, is that if the facts as admitted or proved be susceptible of but one construction or conclusion the right to the writ becomes a matter of law and the board or commission may be compelled to act in accordance with the facts as admitted or established. (*Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784].)

■ The burden of proving that he possessed a good moral character rested upon respondent. (*In re Wells*, 174 Cal. 467 [163 Pac. 657]; *Spears* v. *State Bar*, 211 Cal. 183 [294 Pac. 697, 72 A. L. R. 923]; *United States* v. *Leles*, 236 Fed. 784; *United States* v. *Wexler*, 8 Fed. (2d) 880.) ■ The suspension of criminal proceedings as to the first charge and the dismissals of the other two charges did not conclusively establish respondent's good moral character but the commission could investigate the facts relative to such charges and find therefrom respondent's moral character. (*In re Wells*, supra; *Spears* v. *State Bar*, supra.) ■ His admission, before the juvenile court, of the truth of complainant's testimony that he was present and, by threats, participated in the taking of complainant's watch and money by an accomplice sufficiently established his guilt of robbery. Innocence of the crime was not shown by his testimony before that court that the accomplice actually took the property and never divided it with him, although he partook of liquor purchased therewith. His evidence, given at the trial of the accomplice in which he denied that any robbery had occurred, claimed that the victim voluntarily gave up his property, and excused his inability to remember details because of intoxication, compelled an inference of untruthfulness. The testimony of the three officers, before the commission, that he was intoxicated at the time of the collision, was sufficient to establish his guilt of the third offense. His denial of intoxication and explanation of the cause of the collision merely raised a conflict, which the commission was empowered to decide. His statement to the commission that

he visited a place, proved by police testimony to be a "bootlegging flat", for the purpose of drinking and card-playing could well have influenced the commission's decision. This evidence together with testimony of intoxication in the other two offenses was a sufficient basis for finding that respondent lacked sobriety. The weight and effect to be given to the letters of recommendation and the character testimony were matters for the commission's consideration. At most such evidence merely raised a conflict of fact and did not necessarily compel a finding contrary to that made by the commission. His persistent denial of culpability of any of the offenses, in the face of his admissions and contradictory evidence, may well have convinced the commission that he lacked contrition, which is essential to true reformation and frankness, which is a prime requisite of good moral character. It cannot be said, therefore, that the entire evidence leads to the single conclusion that respondent was of good moral character.

The judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 27, 1934.