TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

```
-----------------------------------------------------------------
                              :
       OPINION               :   No. 88-701
                              :
          of                 :   DECEMBER 21, 1988
                              :
JOHN K. VAN DE KAMP          :
   Attorney General          :
                              :
CLAYTON P. ROCHE             :
Deputy Attorney General      :
                              :
-----------------------------------------------------------------
```

THE HONORABLE LEROY GREENE, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

May the executive branch of state government transfer budget and staff for all or a portion of the administration of the Community Development Block Grant Program from the Department of Housing and Community Development to the Department of Commerce without following the reorganization procedure established by Government Code section 12080 et seq.?

CONCLUSION

The executive branch of state government may by interagency agreement transfer budget and staff for all or a portion of the administration of the Community Development Block Grant Program from the Department of Housing and Community Development to the Department of Commerce without following the reorganization procedure established by Government Code section 12080 et seq., provided ultimate responsibility for that administration lies with the Department of Housing and Community Development.

ANALYSIS

Pursuant to the provisions of 42 United States Code section 5301 et seq., the federal government allocates funds to states under the Small Cities Community Development Block Grant Program (hereinafter "CDBG"). "The primary objective of . . . [the program] is the development of viable urban communities, by providing decent housing and a suitable living environment and

expanding economic opportunities, principally for persons of low and moderate income. . . . " (42 U.S.C. § 5301(c).) Thus, federal funds are to be used for both housing <u>and</u> economic development.

In 1983 (Stats. 1983, ch. 963) the Legislature enacted sections 50825 through 50831 of the Health and Safety Code, placing the administration of the CDBG in the Department of Housing and Community Development (HCD) both as to housing and economic development - that is, the total federal CDBG program. The state legislation requires that at least 51 percent of the available federal funds "shall be utilized by the department to make grants to eligible cities or counties for the purpose of providing or improving housing opportunities for persons or families of low or moderate income." (Health & Saf. Code, § 50828.) Accordingly, a substantial portion of the funds may still be made available for economic development. (See Health & Saf. Code, § 50827.)

The Legislature has defined the powers and duties of the Department of Commerce (DOC) in section 15310 et seq. of the Government Code. Section 15330 provides in part:

"The Department of Commerce shall be the principal state agency responsible for:

"(a) Coordinating federal-state-local relationships in economic development, the continual evaluation of the impact of policies and programs affecting economic development, and encouraging the full utilization of programs available for assisting the residents of the state and local public entities in satisfying the economic development needs of the state.

"(b) Applying for and allocating federal funds available under the Public Works and Economic Development Act of 1965, as amended, and such other federal funds as may be available which will promote and assist economic development in the state. . . ."

(See also, e.g., Gov. Code, § 15332 re duties of DOC's "Office of Local Development.")

Accordingly, although California has one department primarily interested in <u>housing</u> development and another department primarily interested in <u>economic</u> development, the administration of both facets of the CDBG program has been placed in the Department of Housing and Community Development.

In implementation of the 1983 legislation placing the CDBG program with HCD, that department has enacted regulations which provide that thirty percent of the CDBG funds shall be utilized solely for economic development. (25 C.C.R. § 7062.1.)

The question presented for our opinion is whether HCD may transfer budget and staff for all or a portion of the administration of the CDBG program to DOC without the benefit of a reorganization plan submitted by the Governor to and acquiesced in by the Legislature pursuant to section 12080 et seq. of the Government Code.

We conclude that HCD may do so pursuant to an interagency agreement entered into with DOC, provided that ultimate responsibility for that administration lies with HCD. In reaching this result we conclude that section 12080 et seq. of the Government Code is not the exclusive means by which executive department reorganizations may be accomplished. Other statutory procedures may be available. In this case, as will be developed herein, HCD may accomplish the questioned transfer of budget and staff pursuant to the statutory procedures provided for interagency agreements found in section 50406 of the Health and Safety Code and section 11256 et seq. of the Government Code.

1. The Nonexclusivity of Section 12080 et seq. of the Government Code

We discuss first the nonexclusivity of the gubernatorial reorganization plan laws. As part of the 1966 constitutional revision, the People of the State of California approved the addition of article V, section 6 to the California Constitution. It provides:

"Authority may be provided by statute for the Governor to assign and reorganize functions among executive officers and agencies and their employees, other than elective officers and agencies administered by elective officers."

Sections 12080 through 12081.2 of the Government Code were enacted to implement this provision.

These executive department reorganization laws essentially provide that the Governor shall from time to time prepare one or more reorganization plans for the executive branch of the Government in the form of a bill and submit them to the Legislature. If the Legislature, after studying the plan or plans, does not by resolution of either house reject the plan or plans within 60 days after submission, the plan or plans go into effect. It is contemplated that the Legislature will thereafter enact any statutes which may be necessary to reflect the changes made by the reorganization.

An examination of the executive department reorganization laws fails to disclose any language which would indicate that these laws are to be exclusive. Thus section 12080.1 of the Government Code states merely that:

"The Governor, from time to time, shall examine the organization of all agencies and shall determine what changes therein are necessary to accomplish one or more of the following purposes:

"(a) To promote the better execution of the laws, the more effective management of the executive and administrative branch of the state government and of its agencies and functions and the expeditious administration of the public business;

"(b) To reduce expenditures and promote economy to the fullest extent practicable consistent with the efficient operation of the state government;

"(c) To increase the efficiency of the operation of the state government to the fullest extent practicable;

"(d) To group, consolidate and coordinate agencies and functions thereof as nearly as possible according to major purposes,

"(e) To reduce the number of agencies by consolidating those having similar functions under a single head and to abolish such agencies or functions thereof as may not be necessary for the efficient operation of the state government.

"(f) To eliminate overlapping and duplication of effort.

"The Legislature declares that the public interest requires the carrying out of the purposes set forth in this section, and that such purposes may be accomplished more speedily and effectively under this article than by the enactment of specific legislation."

The foregoing statement of duties and purposes would in no way preclude the operation of other legislation which might provide procedures for state executive department reorganization. In fact, as early as 1969 this office reached this conclusion as to nonexclusivity of the reorganization laws in an unpublished opinion. In Indexed Letter, I.L. 69-15, to the Executive Officer of the State Personnel Board we considered whether that board could establish a new civil service class of Deputy Director for Operations in the Department of Professional and Vocational Standards. One of the objections which had been raised to the board was "that the board could not create the new class at this time because. . . the director was proposing a 'reorganization' within the meaning of section 12080 [of the Government Code.]"

For reasons not material herein we considered the question as to gubernatorial reorganization as subsidiary and not controlling at that time. We did state, however, as follows:

"In the light of this, we shall not discuss at length the contention of these employees that the director's proposal is a 'reorganization' under section 12080, requiring submission to the legislature. It will only be noted that it does not appear that the procedure to reorganize established in section 12080 and following was intended by the legislature to be the exclusive authority under which work may be realigned, changed, or reorganized. This is one method, first established in 1967 pursuant to newly enacted constitutional authority, primarily directed to allowing the Governor to initiate reorganization along the lines of the federal plan. (See Report of Assembly Interim Committee on Government Organization, Organization of the Executive branch, Vol. 12, No. 12, 1967.) Other authority has existed for many years and has not been removed by enactment of section 12080 and following. Sections 11152 and 11154 contain general authority for a department head to reorganize, and there are other sections, such as 13008, which contain such authority for certain departments, with the approval of the Governor. Further, it would appear

reasonable to conclude that, under some circumstances, an appointing power has authority to realign work and assignments under his authority without the change being of sufficient stature to require formal approval of the Governor. Certainly every change in work, or the establishment of every new position, does not have to be formally approved by the Governor. This has never been the practice, and it does not appear that the legislature so intended by enacting section 12080 and following. . . ."

2. The Statutory Procedures For Interagency Agreements

Having concluded that the gubernatorial reorganization plan laws are not exclusive, we now discuss the second facet of our conclusion herein, whether HCD can transfer the administration of all or a portion of the CDBG program to DOC by interagency agreement, and accordingly can do so without following the procedures set forth in section 12080 et seq. of the Government Code.[1] This gives rise to a consideration of section 50406 of the Health and Safety Code and section 11256 of the Government Code relating to interagency agreements.

Section 50406 of the Health and Safety Code provides with respect to HCD:

"For the purposes of this division, the department [HCD] shall have all of the following powers:

". . . . . . . . . . . . . . . . . . . . . . .

"(h) To enter into agreements or other transactions with any governmental agency, including an agreement for administration of a housing or community development program of the governmental agency by the department, or for administration by another governmental agency of a program of the department, either in whole on in part. . . ." (Emphasis added.)

Section 11256 of the Government Code, a more general provision, provides for interagency agreements between state agencies. It states:

"Subject to approval of the Director of General Services, state agencies may furnish services, materials or equipment to, or perform work for, other state agencies

_____

[1]Our focus in this portion of the opinion is on interagency agreements since we are advised that historically, in recognition of the respective expertise of HCD and DOC in housing matters and economic development matters, the two departments have entered into such agreements whereby some of the functions of the administration of the economic development portion of the CDBG program have been transferred from HCD to DOC.

upon such terms and conditions and for such considerations as they may determine and, subject to such approval, may enter into agreements for such purpose. The state agency furnishing or performing said work, services, materials or equipment shall include in its charges therefor such direct and indirect costs to the state in furnishing or performing said work, services, materials or equipment as may be approved by the Director of General Services, and such state agency shall compute said charges in a manner approved by the Director of Finance.

"The Director of General Services, upon such terms and conditions as he may prescribe, may except from his approval, or grant blanket approval for, the performance of any work, the furnishings of any services, materials or equipment, the entering into of any agreements, the computation of any charges, or the inclusion of any costs provided for herein."

In 57 Ops.Cal.Atty.Gen. 594, 598 (1974) with respect to interagency agreements between state agencies, we concluded:

"Under the foregoing provision [Gov. Code, sec. 11256] it is our opinion that the Board of Equalization and the Franchise Tax Board could legally enter into an interagency agreement whereby the Franchise Tax Board could provide the Board of Equalization with auditing and investigatory services to assist the Board of Equalization in discharging its responsibilities under section 11610 et seq. It must be emphasized, however, that such an agreement could not shift the Board of Equalization's responsibilities under section 11610 et seq. to the Franchise Tax Board. See 3 Ops.Cal.Atty.Gen. 184, 186 (1944). The Board of Equalization would remain totally responsible for ensuring that the required audits and investigations were performed and for the contents of any reports which were required to be filed. . . ."

This cautionary language from our 1974 opinion appears to be an application of the same rule set forth by the California
Supreme Court two years later in Bagley v. City of Manhattan Beach (1976) 18 Cal.3d 22, 24 as follows:

"When the Legislature has made clear its intent that one public body or official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization. (City and County of San Francisco v. Cooper (1975) 13 Cal.3d 898, 923-924 [120 Cal.Rptr. 707, 534 P.2d 403]; California Sch. Employees Assn. v. Personnel Commission (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436].)" (Emphasis added.)

Corollary propositions to this rule of nondelegability are found in California Sch. Employees v. Personnel Commission (1970) 3 Cal.3d 139, 144, as follows:

"On the other hand, public agencies may delegate the performance of ministerial tasks, including the investigation and determination of facts preliminary to agency action. (Klevesahl v. Byington, 1 Cal.App.2d 671, 676 [37 P.2d 179]; Mecchi v. Lyon Van & Storage Co., 38 Cal.App.2d 674, 682 [102 P.2d 422, 104 P.2d 26]; see 2 McQuillin, supra, § 10.41, at pp. 856-857.) Moreover, an agency's subsequent approval or ratification of an act delegated to a subordinate validates the act, which becomes the act of the agency itself. (See Mott v. Horstmann, 36 Cal.2d 388, 391 [224 P.2d 11]; McQuillin, supra, § 10.41, at p. 856; 4 McQuillin, supra, § 12.233e at p. 240.)"

It is our understanding that the recently proposed interagency agreement between HCD and DOC will not transfer complete responsibility for the economic development portion of the CDBG program from HCD to DOC. Only "ministerial" tasks such as the marketing of the program and sitting as members of the grant advisory committee will be delegated. The ultimate responsibilities for determining who should receive such grants will remain with HCD. Thus the agreement will satisfy the rule set forth in Bagley v. City of Manhattan Beach, supra, 18 Cal.3d 22, 24, and our cautionary language in 57 Ops.Cal. 594, 598 (1974), supra, concerning the nondelegation of discretionary duties.

Accordingly, under that rule the administration of the CDBG may be transferred from HCD to DOC since HCD in no way will transfer its ultimate responsibility for the CDBG program to DOC, but will retain that power and duty.

As to the manner in which this transfer may be accomplished, we note that nothing in section 50406 of the Health and Safety Code or section 11256 of the Government Code provides for the transfer of budget or staff per se.[2] However, as to each department's budget, the provisions with respect to interagency agreements between state agencies contained in the Government Code in effect accomplish the same thing. Sections 11257 through 11263 of that code provide the manner in which payments under the contract will be handled or otherwise accomplished. In essence these sections provide the procedure the Controller will follow with respect to such funds, whether they be "advances", "transfers" of funds, or "money received" by the performing agency. These sections essentially provide that the responsible agency's appropriation (herein HCD) will be charged with costs of the transferred services under the contract, and that the secondary agency's (herein DOC) appropriations will be credited with that amount so it has the funding to provide the services.

---

[2]In appropriate cases the Director of Finance is authorized pursuant to section 28 of the Budget Act to augment or decrease the budgeted amounts for any program, with appropriate "personnel action", after notification of the necessity therefor to the budget committee of each house of the Legislature, and the Joint Budget Committee.

We have been informed that no "section 28" action is presently contemplated by HCD and DOC.

Should DOC need any additional personnel to perform the services for HCD under the interagency agreements it will have to receive the approval of the Department of Finance. The latter Department is authorized, pursuant to section 31 of the Budget Act and section 6208 of the State Administration Manual (SAM) to approve temporary positions during the budget year. The establishment of any such temporary positions must be reported to the Joint Budget Committee of the Legislature pursuant to section 31. Appropriate personnel adjustments would, we presume, be taken by HCD to reflect the transfer of workload to DOC.

Accordingly, in summary we conclude that the executive branch of state government may by interagency agreement transfer budget and staff for all or a portion of the administration of the Community Development Block grant Program from the Department of Housing and Community Development to the Department of Commerce without following the reorganization procedure established by Government Code section 12080 et seq., provided that ultimate responsibility for that administration lies with the Department of Housing and Community Development.

* * * *